# F<small>INKELSTEIN</small> & K<small>RINSK</small> LLP
ATTORNEYS AT LAW
550 WEST C STREET
SUITE 1760
SAN DIEGO, CALIFORNIA 92101

TELEPHONE (619) 238-1333

FACSIMILE (619) 238-5425

June 11, 2018

***BY ECF AND EMAIL***

Hon. Katherine Polk Failla
United States District Court
   for the Southern District of New York
40 Foley Square
New York, NY 10007

     Re: *Tucker v. Chase Bank USA, N.A.,* No. 18-cv-3155-KPF

Dear Judge Failla:

I represent the named plaintiff, Brady Tucker ("Plaintiff" or "Mr. Tucker"), in this putative class action against defendant Chase Bank USA, N.A. ("Defendant" or "Chase"). I respectfully submit this letter in opposition to the stated ground for Chase's motion to dismiss. *See generally* Dkt. 17.

Chase argues that an issuer cannot be found to "change the terms" of a credit card account within the meaning of TILA or Regulation Z, unless the issuer amends the four corners of its written contract with the cardholder. In other words, Chase contends that it did not "change the terms" of Mr. Tucker's credit card account because it did not change its written disclosure of the terms of Mr. Tucker's account. Chase's argument lacks merit.

> The Congress [found] that economic stabilization would be enhanced . . . by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to . . . avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.

15 U.S.C. § 1601(a) (titled "Congressional findings and declaration of purpose"). As shown in Mr. Tucker's Complaint (Dkt. 1) and the Exhibits thereto (Dkt. 1-1; Dkt. 1-2), Chase engaged in an "unfair credit billing and credit card practice" that resulted in him having no "awareness of the cost" of his credit transactions. *Id.* Mr. Tucker had no opportunity to attain that awareness here.

Chase seeks to manufacture awareness on Mr. Tucker's part by reinterpreting, *post hoc*, Chase's longstanding definition of a "cash-like transaction." Dkt. 17 at 2 ("Cryptocurrency transactions are 'cash-like transactions,' and so are subject to the interest rates and fees applicable to cash advances under his CMA."). That is not what Chase ever told Mr. Tucker. As Chase concedes, it told Mr. Tucker that "cash-like transactions" included "purchasing travelers checks, foreign

Hon. Katherine Polk Failla
June 11, 2018
Page 2

currency, money orders, wire transfers or similar cash-like transactions." Dkt. 17 at 1.[1] Chase does not argue — and no court has found — that cryptos are "similar" to "travelers checks," "foreign currency," "money orders" or "wire transfers" within the common understanding of those terms. As currently alleged, cryptos are not "similar" to any of those enumerated terms. *See* Dkt. 1, ¶¶1-4. Nor are they "similar" to actual money. *Id.* In general legal terms, cryptos are probably best viewed as commodities. *Cf. C.F.T.C. v. McDonnell*, 287 F.Supp.3d 213, 228 (E.D.N.Y. 2018) ("Virtual currencies are 'goods' exchanged in a market for a uniform quality and value.").

But even if buying a crypto was a "cash-like transaction" within the meaning of Chase's original CMA[2], Mr. Tucker could not have known this in light of Chase's conduct and disclosures here. As Plaintiff shows in both Exhibits to his Complaint, Chase repeatedly and expressly affirmed to him that his crypto purchases were "Purchases," not "cash-like transactions," within the meaning of the CMA. *See* Dkt. 1-1; Dkt. 1-2. Post-suit, Chase now says it merely "forbore from charging higher interest rates and fees that it was contractually entitled to charge" all along. Dkt. 17 at 2. The CMA itself, however, never purported to grant Chase that discretion. CMA at 4 ("The following transactions *will* be treated as cash advances: purchasing travelers checks, foreign currency, money orders, wire transfers or similar cash-like transactions . . . .") (emphasis added).

What the original CMA did grant Chase discretion to do is "change the terms" of Mr. Tucker's credit card agreement *without amending the four corners of the CMA disclosure*. *See id.* at 3 ("We may change the terms of this agreement including APRs and fees from time to time. We may also add new terms or delete terms. APRs or *other terms may also change without amendment,* for example when the Prime Rate changes.") (emphasis added). This is precisely what occurred here. Chase changed the terms of Plaintiff's credit card agreement without a written amendment or other notice of the change. TILA and Regulation Z prohibit this. *Accord id.* ("Our ability to make changes to this agreement is limited by applicable law.").

Congress mandated that "a creditor shall provide a written notice of any significant change, as determined by rule of the Bureau, in the terms . . . of the cardholder agreement between the creditor and the obligor . . . ." 15 U.S.C. § 1637(i)(2). Exercising its interpretive authority, the Consumer Financial Protection Bureau ("Bureau") defined "significant change in account terms" to include changes to, *inter alia*: "[a]ny transaction charge imposed by the creditor," or "[t]he type of transaction to which [an interest rate] applies, if different rates apply to different types of transactions." Dkt. 1, ¶48 (quoting 12 C.F.R. §§ 1026.6(b)(2)(iv) and 1026.6(b)(4)(i)(C)). Chase's argument does not meaningfully address the Bureau's interpretations. This is telling.

---

[1] *See also* https://www.chase.com/content/feed/public/creditcards/cma/Chase/COL00079.pdf (last visited June 7, 2018) (hereinafter "CMA" or "CMA disclosure"), at 4 (numbered by Chase as page 2). This CMA from Chase's website reflects Chase's standard consumer credit card agreement for Plaintiff's Southwest Airlines Visa credit card. This CMA is quoted extensively in Plaintiff's Complaint (*e.g.,* ¶¶21-23), so the Court can properly consider it on a motion to dismiss. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d. Cir. 2010).

[2] Mr. Tucker most certainly disputes this point. Chase's argument to the contrary is pure sophistry.

Hon. Katherine Polk Failla
June 11, 2018
Page 3

The Court should also find it "notable," as Judge Pauley once did, that Chase fails to "cite any case that dismisses a TILA claim for the types of infirmities [it] argue[s] are fatal here." *In re Currency Conversion Fee Antitrust Litig.*, 265 F.Supp.2d 385, 423 (S.D.N.Y. 2003). The decisions Chase cites here are not applicable to Mr. Tucker's claim. In *Leidel v. Coinbase, Inc.*, the Eleventh Circuit analyzed whether Coinbase could enforce its own arbitration agreement against non-signatories to that agreement, under Florida and California law. *See generally* 2018 WL 1905954 (11th. Cir. Apr. 23, 2018). *Alibaba Grp. Holding Ltd. v. Alibabacoin Foundation*, which is equally inapposite, analyzed jurisdictional issues in a trademark infringement case. *See generally* 2018 WL 2022626 (S.D.N.Y. Apr. 30, 2018). Both opinions merely recited certain parties' factual assertions, not a court's factual findings or conclusions, in totally incomparable legal contexts.

Judge Forrest, in *United States v. Ulbricht*, held that a narcotics trafficker could not evade criminal money laundering charges (among others) by conducting illicit transactions in Bitcoin. 31 F.Supp.3d 540, 569-70 (S.D.N.Y. 2014). Judge Forrest's analysis turned on the broad definition of "financial transaction" under federal money laundering statutes: not "cash-like transactions" under a private credit card agreement. *Id.* For its part, the Ninth Circuit in *Hauk v. JP Morgan Chase Bank USA* merely found that Chase's rate increases on a balance transfer mirrored Chase's preexisting disclosures to the cardholder. 552 F.3d 1114, 1119 (9th Cir. 2009). Here, however, Chase's fee and rate increases on Plaintiff's "Purchases" definitely did *not* mirror Chase's preexisting disclosures to him. That is Mr. Tucker's main point in initiating this action. Chase submits no applicable authority or reason for dismissing his plea for relief at this stage.

Finally, Chase's procedurally improper finger-pointing at an unknown third party should not alter the Court's analysis on a motion to dismiss. As a factual matter, Chase's own business partners at Visa and MasterCard maintain that this change came from card issuers like Chase: not crypto merchants or their contractors. *See* https://www.investopedia.com/news/credit-card-firms-charging-higher-fees-crypto-purchases (last visited June 7, 2018) ("A Visa spokeswoman said via voicemail, 'it would be up to the individual issuer, the financial institution that issued the card, to determine any fees that they might charge for certain types of purchases, so it's not Visa. We don't issue cards.'"). Chase imposed these fees and interest charges against Mr. Tucker; no one forced Chase to start taxing its cardholders. And in any event, this is a moot point. Regardless of which third party Chase might want to blame for its own blunder, third parties have no disclosure obligations to Chase's cardholders under TILA or Regulation Z. Chase is the creditor.

Chase violated TILA and Regulation Z by significantly changing Mr. Tucker's actual credit terms without any notice. Mr. Tucker suffered actual damages as a result, and liability should follow.

Respectfully submitted,

*/s/ David J. Harris, Jr.*
David J. Harris, Jr.
cc: All counsel of record (via ECF)