UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRADY TUCKER, RYAN HILTON, and STANTON SMITH, *on behalf of themselves and others similarly situated*,<br><br>     Plaintiffs,<br><br>  -v.-<br><br>CHASE BANK USA, N.A.,<br><br>     Defendant. | 18 Civ. 3155 (KPF)<br><br>**<u>OPINION AND ORDER</u>** |

KATHERINE POLK FAILLA, District Judge:

Plaintiffs Brady Tucker, Ryan Hilton, and Stanton Smith used Chase Bank credit cards to buy various "cryptocurrencies." From 2017 until early 2018, Defendant Chase Bank USA, N.A. ("Chase") classified Plaintiffs' acquisitions of cryptocurrency as "purchases" for purposes of each Plaintiff's operative credit card agreement; this classification subjected the transactions to certain interest rates. However, from January 23 to February 2, 2018, Chase classified Plaintiffs' cryptocurrency acquisitions as "cash advances," which were subjected to substantially higher interest rates and transaction fees under the relevant agreements.

Plaintiffs filed this suit, on behalf of themselves and others similarly situated, alleging breach of contract and violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667f, and its implementing regulation, Regulation Z, 12 C.F.R. Part 1026. Specifically, Plaintiffs claim that Chase breached their credit card agreements by treating acquisitions of

cryptocurrency as cash advances.  In addition, Plaintiffs claim that Chase

violated TILA and Regulation Z by (i) failing to make clear and conspicuous

disclosures about the types of transactions for which it imposed different rates,

in violation of 15 U.S.C. § 1632(a) and its implementing regulations; (ii) failing

to provide advance notice of significant changes in account terms, in violation

of 15 U.S.C. § 1637(i)(2) and its implementing regulations; and, in the

alternative, (iii) failing to provide accurate disclosures in its periodic account

statements in violation of 15 U.S.C. § 1637(b) and 12 C.F.R. § 1026.5(c).

Plaintiffs also seek declaratory relief.

Chase moves to dismiss Plaintiffs' breach of contract claim and their

three TILA and Regulation Z claims under Federal Rule of Civil Procedure

12(b)(6).  For the reasons that follow, the Court denies the motion as to

Plaintiffs' breach of contract and clear and conspicuous disclosure claims, and

grants the motion as to Plaintiffs' advance notice and accurate periodic account

statements claims.

## BACKGROUND[1]

### A.    Factual Background

#### 1.    Cryptocurrency Generally

"Cryptocurrency" is a term of art that refers to units of computer code,

created by private computer programmers, that may be used as forms of

---

[1]    The Court draws the facts in this section from the Amended Complaint ("Am. Compl."
(Dkt. #30)).  The well-pleaded allegations of Plaintiff's Amended Complaint are assumed
to be true for purposes of the instant motion.  *See In re Elevator Antitrust Litig.*, 502
F.3d 47, 50 (2d Cir. 2007) (per curiam).  For ease of reference, the Court refers to
Chase's Memorandum of Law in Support of its Motion to Dismiss the Amended
Complaint as "Def. Br." (Dkt. #40), Plaintiffs' Opposition to Defendant's Motion to

currency by some private individuals.  (Am. Compl. ¶ 45).  The creation of cryptocurrency is not subject to control or oversight by any governmental agency; according to Plaintiffs, "anyone can create their own cryptocurrency at any time, so long as they are sufficiently skilled at programming computers." (*Id.* at ¶¶ 22, 26).  Cryptocurrencies are not legal tender, do not represent a claim on legal tender, are not accepted as currency by the government, and are not accepted as payment by the "overwhelming majority of private business and individuals."  (*Id.* at ¶¶ 20-21).  Although certain types of cryptocurrency may be used as currency, cryptocurrencies are "fundamentally private-sector technologies, computer codes, and software applications."  (*Id.* at ¶¶ 29, 31). Cryptocurrency can be obtained by purchasing it from a creator of same, creating new units of the cryptocurrency, or creating a new type of cryptocurrency altogether.  (*See id.* at ¶¶ 22, 24).

### 2.    Chase Credit Card Agreements

Chase is one of the largest issuers of credit cards in America, offering a variety of credit cards to consumers nationwide.  (Am. Compl. ¶¶ 1, 35).  To receive a Chase credit card, consumers must enter into a credit card agreement with Chase, the terms of which are contained in what the relevant statute and regulations refer to as an "account-opening disclosure" (the "Contract").  (*Id.* at ¶ 35).  The terms of the Contracts differ in some respects depending upon the type of credit card at issue, but each sets forth applicable interest rates and

Dismiss the Complaint as "Pl. Opp." (Dkt. #42), and Chase's Reply Memorandum of Law in Support of its Motion to Dismiss the Amended Complaint as "Def. Reply" (Dkt. #43).

fees that apply to different types of credit card transactions. (*Id.* at ¶ 36). The Contracts specify a variable annual percentage rate ("APR") for purchases, and a substantially higher APR for cash advances.

The terms of the Contracts are identical in three key respects relevant to this litigation. *First,* the Contracts define "purchases" as credit card transactions to "buy goods and services." (Am. Compl. ¶ 88, Ex. A). *Second*, with regard to cash advances, the Contracts note:

> You may obtain cash from automatic teller machines, at banks or by using cash advance checks [issued by Chase]. Unless we [Chase] say otherwise, balance transfer checks or promotional checks made payable to cash or yourself will be treated as cash advances. We treat certain other transactions as cash advances. See the Cash-like Transactions section under [the] Important Definitions [section] above.

(*Id.* at ¶ 38). *Third*, the Contracts contain identical definitions of "cash-like transactions":

> The following transactions will be treated as cash advances: *purchasing travelers checks, foreign currency, money orders, wire transfers or similar cash-like transactions*; purchasing lottery tickets, casino gaming chips, race track wagers or similar betting transactions; and making a payment using a third party service.

(*Id.* at ¶ 39 (emphasis supplied in Amended Complaint)).

### 3. Plaintiffs' Use of Chase Credit Cards to Buy Cryptocurrency

Plaintiffs are Chase credit card holders and, as such, have entered into Contracts with Chase. (Am. Compl. ¶¶ 13-15). Beginning in 2016, Plaintiffs began using their Chase credit cards to buy cryptocurrency. (*Id.* at ¶¶ 6-7).

4

From in or about 2016 until January 22, 2018, Chase classified each of these acquisitions of cryptocurrency as a purchase within the meaning of the Contracts. (*Id.* at ¶ 7). Chase assessed no transaction fees and applied the lower interest charges specified for purchase transactions. (*Id.*). During this time, Plaintiffs received periodic account statements from Chase in which their cryptocurrency transactions were listed as "purchases." (*Id.* at ¶¶ 47, 50, 53).

From January 23, 2018, to February 2, 2018, Plaintiffs continued to use the same Chase credit cards to purchase additional cryptocurrency. (Am. Compl. ¶¶ 47, 50, 53). Chase classified these transactions, however, as cash advances, which incur higher interest rates and fees than purchases. (*Id.* at ¶¶ 7, 51). Plaintiffs did not receive advance notice that cryptocurrency acquisitions would be treated as cash advances beginning in or about January 23, 2018. (*Id.* at ¶ 8).

Plaintiffs claim that, had they known that these transactions would be classified as cash advances rather than purchases, they would not have used their Chase credit cards to acquire cryptocurrency, in order to avoid the cash advance fees and interest charges. (Am. Compl. ¶¶ 49, 52, 55). Plaintiffs Smith and Tucker called Chase to dispute the classification and subsequent charges.[2] Chase "conceded and refunded the [c]ash [a]dvance fees" to Smith but refused to remove the cash advance interest charge for either plaintiff. (*Id.* at ¶¶ 48, 54).

---

[2] The Amended Complaint does not allege that Plaintiff Hilton disputed the classification or the charges imposed.

**B.    Procedural History**

Plaintiffs filed their initial complaint in this action on April 10, 2018. (Dkt. #1).  Chase filed a motion to dismiss on July 27, 2018.  (Dkt. #23). Plaintiffs then filed the Amended Complaint on August 17, 2018.  (Dkt. #30). Chase filed a motion to dismiss the Amended Complaint on November 2, 2018. (Dkt. #39).  Plaintiffs filed their opposition on November 30, 2018 (Dkt. #42), and the motion was fully submitted when Chase filed its reply on December 14, 2018 (Dkt. #43).

## DISCUSSION

**A.    Applicable Law**

**1.    Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)**

When considering a motion to dismiss under Rule 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)).  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).

"While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the line from

conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (per curiam) (quoting *Twombly*, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.*" Id.*

### 2. TILA and Regulation Z

Congress enacted TILA in order to promote the "informed use of credit" by consumers. 15 U.S.C. § 1601(a); *see also Anderson Bros. Ford* v. *Valencia*, 452 U.S. 205, 219-20 (1981). In so doing, Congress sought to assure "a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a).

Section 1604(a) of TILA granted the Board of Governors of the Federal Reserve System (the "Board") authority to promulgate regulations furthering the provisions of TILA. Pursuant to this power, the Board enacted Regulation Z, which establishes, *inter alia*, disclosures that credit card issuers must make to consumers and circumstances under which a payment may be credited as late. *See* 12 C.F.R. §§ 226.1-226.59; *Chase Bank USA, N.A.* v. *McCoy*, 562 U.S.

195, 198 (2011).  Authority to issue regulations pursuant to TILA was subsequently transferred to the Consumer Financial Protection Bureau (the "Bureau"), which republished Regulation Z — imposing no new substantive obligations on persons subject to the previously enacted regulation — at 12 C.F.R. §§ 1226.1-1226.60.  76 Fed. Reg. 79,767 (Dec. 22, 2011).

**B.    Analysis**

### 1.    The Court Denies Defendant's Motion to Dismiss Plaintiffs' Breach of Contract Claim

For clarity of analysis, the Court begins with Plaintiffs' claim for breach of contract, over which Plaintiff requests the Court exercise supplemental jurisdiction.  This claim — indeed, the entirety of Plaintiffs' suit — is built on an argument that acquisitions of cryptocurrency could not be classified as cash advances within the meaning of the Contracts.  (Am. Compl. ¶¶ 84-89).  Chase disagrees, claiming that cryptocurrency acquisitions are "cash-like transactions" pursuant to the Contracts, and thus cash advances.  The parties' dispute thus boils down to a difference of opinion concerning the proper interpretation of the term "cash-like transaction."  By the terms of the Contracts, Delaware law governs disputes over contractual interpretation (*id.* at ¶ 86), and it is to that law that the Court turns.

### a.    Interpretation of Contracts Under Delaware Law

For a breach of contract claim to survive a motion to dismiss under Delaware law, "the plaintiff must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation

imposed by that contract; and third, the resultant damage to the plaintiff." *VLIW Tech., LLC* v. *Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

"Under Delaware law, the interpretation of a contract is a question of law suitable for determination on a motion to dismiss." *MicroStrategy Inc.* v. *Acacia Research Corp.*, No. 5735 (VCP), 2010 WL 5550455, at *5 (Del. Ch. Dec. 30, 2010) (collecting cases). "When interpreting a contract, the court strives to determine the parties' shared intent, looking first at the relevant document, read as a whole, in order to divine that intent." *Schuss* v. *Penfield Partners, L.P.*, No. 3132 (VCP), 2008 WL 2433842, at *6 (Del. Ch. June 13, 2008) (citation and internal quotation marks omitted).

A court must "interpret clear and unambiguous terms according to their ordinary meaning." *GMG Cap. Inv., LLC* v. *Athenian Venture Partners I, L.P.*, 36 A.3d 776, 780 (Del. 2012); *see also Paul* v. *Deloitte & Touche, LLP*, 974 A.2d 140, 145 (Del. 2009) ("In interpreting contract language, clear and unambiguous terms are interpreted according to their ordinary and usual meaning."). "Contract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language," and a contract "is not rendered ambiguous simply because the parties do not agree upon its proper construction." *GMG*, 36 A.3d at 780 (citation omitted).

"Dismissal of a claim based on contract interpretation is proper if the defendants' interpretation is the only reasonable construction as a matter of

law," and dismissal is appropriate if a plaintiff opposing a motion to dismiss offers an interpretation that "is not a reasonable one." *Caspian Alpha Long Credit Fund, L.P.* v. *GS Mezzanine Partners 2006 L.P.*, 93 A.3d 1203, 1205 (Del. 2014) (citations and internal quotation marks omitted); *see also id.* at 1208 (dismissal is appropriate if "there is no reasonable reading" of the contract that supports the plaintiff's proposed construction); *accord VLIW Tech., LLC*, 840 A.2d at 615 ("In deciding a motion to dismiss, the trial court cannot choose between two differing reasonable interpretations of ambiguous provisions. Dismissal, pursuant to Rule 12(b)(6), is proper only if the defendants' interpretation is the only reasonable construction as a matter of law.").

### b. Plaintiffs Have Alleged a Reasonable Interpretation of "Cash-Like Transactions"

Plaintiffs allege that (i) the Contracts were enforceable agreements between the parties; (ii) acquisitions of cryptocurrency were treated as cash advances in breach of those Contracts; and (iii) as a result, Plaintiffs were forced to pay greater fees than were appropriate. (*See generally* Am. Compl. ¶¶ 84-89). Chase does not dispute that the Contracts were binding or that a breach of the Contracts would have caused damages. Instead, Chase moves for dismissal on the ground that no breach occurred.

According to Chase, cryptocurrency transactions are plainly cash-like transactions and thus properly treated as cash advances under the Contracts. (Def. Br. 11-14). Resolution of Plaintiffs' breach of contract claims thus hinges on the correct interpretation of the term "cash-like transactions." Under

Delaware law, the breach of contract claim may be dismissed only if Chase's interpretation of "cash-like transactions" is the sole reasonable option. On the other hand, the motion to dismiss must be denied if Plaintiffs plausibly allege a reasonable interpretation of "cash-like transactions" that excludes acquisitions of cryptocurrency.

Chase's interpretation of "cash-like transactions" rests on the purported plain meaning of the phrase. *See Lorillard Tobacco Co.* v. *Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006) ("When the language of a . . . contract is clear and unequivocal, a party will be bound by its plain meaning." (quoting *Rhone-Poulenc Basic Chems. Co.* v. *Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992)); *accord Allied Capital Corp.* v. *GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006) ("When the language of a contract is plain and unambiguous, binding effect should be given to its evident meaning."). Chase refers the Court to the dictionary definition of "cash": "The term 'cash' is commonly understood to mean 'money' and 'money' in turn is 'something generally accepted as a medium of exchange, a measure of value, or a means of payment.'" (Def. Br. 11 (citing the *Merriam-Webster* online dictionary definition of "money")); *see also Lorillard*, 903 A.2d at 740 (noting that a court may refer to the "ordinary dictionary meaning" of a term to determine its plain meaning).[3] Thus, Chase

---

[3]     Chase cites to a number of other external documents to support its interpretation of "cash-like transactions" and its understanding that cryptocurrency is, effectively, cash. (Def. Br. 11-13 (citing white papers, websites, and various financial sources)). "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *see generally Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (discussing documents that a court may

claims that a "cash-like transaction" is a purchase of any item that is similar to a generally accepted means of payment. Because cryptocurrency may be used as a means of payment in some settings, Chase argues that it is "cash-like" under the Contracts. The Court may accept, for purposes of analyzing Chase's motion to dismiss, that this would be a reasonable way to interpret the term "cash-like transactions."

But Plaintiffs offer a different, reasonable interpretation of "cash-like transaction," one that would exclude acquisitions of cryptocurrency. According to Plaintiffs, "cash" refers to physical, government-issued (or "fiat") currency. (Pl. Opp. 7-8). This interpretation of "cash" finds support in the section of the Contracts that describes cash advances, which section states: "You may obtain cash from automatic teller machines, at banks or by using cash advance checks [issued by Chase]." (Am. Compl. ¶ 38). This language suggests that, at the time the Contracts were entered into, the parties understood that "cash" meant fiat currency that could be obtained from an automatic teller machine, such as dollar bills. Thus, a four-corners reading of the Contracts reasonably supports an understanding that "cash" refers to fiat currency. *See GMG*, 36 A.3d at 779 (observing that Delaware courts interpret contracts to "give priority to the parties' intentions as reflected in the four corners of the agreement.")

---

properly consider on a motion to dismiss). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)). The external documents cited by Chase were not attached to the Amended Complaint, incorporated by reference in it, or integral to it. Accordingly, the Court will not consider these documents at this stage in the proceedings.

Based on this interpretation of "cash," Plaintiffs argue that the term "cash-like" encompasses only goods that represent a legal claim to fiat currency, such as checks, money orders, and wire transfers. (Pl. Opp. 7, 9-10; Am. Compl. ¶¶ 7-8). This interpretation is supported by the Contracts' own definition of "cash-like transactions," as it appears in the "Important Definitions" section of the Contracts: "The following transactions will be treated as cash advances: purchasing travelers checks, foreign currency, money orders, wire transfers or similar cash-like transactions[.]" (*Id.* at ¶ 39).

To give meaning to this provision and the scope of "similar cash-like transactions," Plaintiffs invoke a "well-established rule of construction, *ejusdem generis*." (Pl. Opp. 9-11). *Ejusdem generis* provides that, "where general language follows an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned." *Aspen Advisors LLC* v. *United Artists Theatre Co.*, 861 A.2d 1251, 1265 (Del. 2004) (quoting *Triple C Railcar Serv.* v. *City of Wilmington*, 630 A.2d 629, 632 (Del. 1993). Thus, the term "cash-like transactions" should be read to be limited by the words which proceed it: travelers checks, foreign currency, money orders, and wire transfers. As Plaintiffs argue, these preceding words are similar in that they are all financial instruments that have face monetary values and create legal claims to fiat currency. (Pl. Opp. 9). Thus, "similar cash-like transactions" may reasonably be limited to other instruments with face

monetary values that create legal claims to fiat currency.  Because, as Plaintiffs

plausibly allege (Am. Compl. ¶¶ 20, 21), cryptocurrency does not imbue its

holder with a legal right to any government-issued currency, acquisitions of

cryptocurrency could not be classified as a cash-like transaction (Pl. Opp. 7-8).

Chase contests Plaintiffs' application of the doctrine of *ejusdem generis*,

asserting that the words preceding "similar cash-like transactions" are also all

means of payment.  (Def. Reply 8-9).  As a result, Chase says that the term

"similar cash-like transactions" should cover all items which are means of

payment, which would include cryptocurrency.  At this point in the

proceedings, however, it is irrelevant whether Chase's interpretation of "cash-

like transactions" is more reasonable than Plaintiffs'.  "[C]ourts must not

'choose between reasonable interpretations of ambiguous contract provisions.'"

*McBeth* v. *Porges*, 171 F. Supp. 3d 216, 229 (S.D.N.Y. 2016) (quoting *Bay Ctr.

Apts. Owner, LLC* v. *Emery Bay PKI, LLC*, No. 3658 (VCS), 2009 WL 1124451,

at *8 (Del. Ch. Apr. 20, 2009)).  Because Plaintiffs have identified a reasonable

interpretation of "cash-like transactions" that would exclude purchases of

cryptocurrency, the breach of contract claim survives the motion to dismiss.

### 2.    The Court Denies Defendant's Motion to Dismiss Plaintiffs' Claim That Chase Violated TILA's Clear and Conspicuous Disclosure Requirement

Separately, Plaintiffs claim that the Contracts' ambiguity as to what

constitutes a cash-like transaction, and thus a cash advance, violates TILA and

Regulation Z's clear and conspicuous disclosure requirement.  (Am. Compl.

¶¶ 90-97).  Chase moves to dismiss this claim for much the same reason as the

breach of contract claim:  Cryptocurrencies are unambiguously cash-like transactions.  (Def. Br. 14-17).  And for reasons similar to those in the preceding section, the Court disagrees.

### a.    Applicable Law

TILA and Regulation Z require that account-opening disclosures, like the Contracts, be "clear[] and conspicuous[]."  15 U.S.C. § 1632(a); 12 C.F.R. § 1026.5(a)(1)(i).  To comply with both provisions, account-opening disclosures should state "[t]he type of transaction to which [an interest] rate applies, if different rates apply to different types of transactions."  12 C.F.R. § 1026.6(b)(4)(i)(C)).

The Official Staff Commentary (which was created by the Board and adopted by the Bureau) interprets the "clear and conspicuous" standard present in both TILA and Regulation Z.  For account-opening disclosures concerning which rates apply to different transactions, the Commentary interprets "clear and conspicuous" to require that the information be presented "in a reasonably understandable form."  12 C.F.R. Pt. 1026, Supp. I cmt. 5(a)(1)-1.

The Second Circuit has recognized that "[a]lthough [] TILA is a disclosure statute, its purpose is to require meaningful disclosure, not more disclosure, and that [] TILA does not require perfect disclosure, but only disclosure which clearly reveals to consumers the cost of credit."  *Strubel* v. *Comenity Bank*, 842 F.3d 181, 199 (2d Cir. 2016) (internal citations and quotations omitted).  Though the Second Circuit has not yet adopted a standard by which to

evaluate the adequacy of TILA disclosures, other Circuits and courts within this Circuit have adopted "the vantage point of a hypothetical average consumer — a consumer who is neither particularly sophisticated nor particularly dense." *Strubel* v. *Capital One Bank (USA), N.A.*, 179 F. Supp. 3d 320, 325 (S.D.N.Y. 2016).

### b. The Contracts' Definition of "Cash-Like Transactions" Is Ambiguous

For the reasons discussed in Section B.1.b, *supra*, Plaintiffs have plausibly alleged that the Contracts would not clearly reveal to an average consumer that acquisitions of cryptocurrency are cash-like transactions and subject to cash-advance rates and fees. Thus, Plaintiffs' clear and conspicuous disclosure claim survives the motion to dismiss.

### 3. The Court Grants Defendant's Motion to Dismiss Plaintiffs' Advance Notice Requirement Claim Under TILA

As a second TILA claim, Plaintiffs take issue with Chase's failure to give forewarning that it would begin treating acquisitions of cryptocurrency as cash advances beginning January 23, 2018. (Am. Compl. ¶¶ 98-106). Plaintiffs claim that Chase violated TILA and Regulation Z's requirement that credit card issuers provide advance notice of significant changes in the terms of credit card agreements. (*Id.*). Chase moves to dismiss, arguing that Plaintiffs fail to state a claim because they do not allege that any terms of the Contracts were, in fact, changed. This time, the Court agrees.

### a. Applicable Law

TILA requires credit card issuers to "provide a written notice of any significant change … in the terms (including an increase in any fee …)" at least 45 days before the change takes effect. 15 U.S.C. § 1637(i)(2). To effectuate this requirement, Regulation Z requires that written notice of "a significant change in account terms" be given to "each consumer who may be affected" "at least 45 days prior to the effective date of the change[.]" 12 C.F.R. § 1026.9(c)(2)(i)(A). Regulation Z defines "significant change to an account term" as "a change to a term" required in certain account-opening disclosures, including § 1026.6(b)(4). *Id.* § 1026.9(c)(2)(ii). Section 1026.6(b)(4) requires that account-opening disclosures provide the various rates, fees, and charges authorized by the credit card agreement, as well as the types of transactions to which each of the various rates, fees, and charges apply. *Id.* § 1026.6(b)(4).

### b. Plaintiffs Do Not Allege That the Terms of the Contracts Changed

"Cash advance" and "cash-like transactions" are terms relating to the "type of transaction[s] to which [] rate[s] appl[y]," and thus must be disclosed in account-opening disclosures. 12 C.F.R. § 1026.6(b)(4). The parties do not dispute that, had the definitions of those terms changed, advance notice of the changes would be required under TILA and Regulation Z. 15 U.S.C. § 1637(i)(2); 12 C.F.R. § 1026.9(c)(2)(i)(A). But Plaintiffs do not allege that the definitions of "cash advance," "cash-like transactions," or any other relevant terms within the Contracts, were changed or amended in the literal sense; as relevant here, the words of the credit card agreement and account-opening

disclosures remain unchanged.  Instead, Plaintiffs claim that on January 23,

2018, Chase began to breach the terms of the Contracts by misclassifying

acquisitions of cryptocurrency as cash advances.  The question is thus whether

a change in *application* of an unchanged term constitutes a significant change

to a contract *term*, which would require advance notice under TILA or

Regulation Z.

### i. Advance Notice Is Required Only When Disclosed Terms Are Significantly Changed

This question has not been addressed by the Second Circuit or by a

sister court within this Circuit.  However, an identical issue was recently raised

and decided in *Eckhardt* v. *State Farm Bank FSB*, No. 18 Civ. 1180 (JBM), 2019

WL 1177954, at *3-6 (C.D. Ill. Mar. 13, 2019).[4]  The plaintiff in *Eckhardt*

brought a very similar suit, also claiming that a credit card issuer had begun

misclassifying acquisitions of cryptocurrency as cash advances, in violation of

a credit card agreement.  *See id.*  The plaintiff asserted that the credit card

issuer was required to have provided advance notice of a change in terms

under TILA and Regulation Z, though the actual words of the operative

agreement had remained unchanged.  *See id.*  The court in *Eckhardt* granted a

motion to dismiss this claim, determining that advance notice is only required

when there is a "change to a term," 12 C.F.R. § 1026.9(c)(2)(i), which "clearly

---

[4]     Plaintiffs cite to a second case, *Galavais et al.* v. *Bank of Am., N.A., et al.*, No. 18 Civ.
09490 (SVW) (PJW) (C.D. Cal.), in which the plaintiffs also claimed that TILA's advance-
notice requirement had been violated, though no term had been expressly changed.
There, the court denied a motion to dismiss the claim, apparently concluding that
plaintiffs had sufficiently alleged a violation of the law.  However, the court's summary
order is less than a page in length and contains little explication of its reasoning.  It is
therefore not persuasive authority for this Court.

and unambiguously contemplates an actual change to a written term in the cardholder agreement." 2019 WL 1177954, at *4.

This Court finds the logic of *Eckhardt* persuasive and arrives at the same conclusion. As relevant here, TILA and Regulation Z require advance notice when there is "a change to a term required to be disclosed under § 1026.6(b)(4)." A "term" of a written contract is a "contractual stipulation" or a "[p]rovision[] that defines and agreement's scope." "*Term*," BLACK'S LAW DICTIONARY (10th ed. 2014). Thus, the advance notice requirement is invoked when there has been an actual change to a stipulation or provision of a contract that is otherwise required to be disclosed (a "disclosed term"). Absent a significant change in a disclosed term, no advance notice is required.

### ii. Plaintiffs Fail to Demonstrate That Advance Notice Was Required Absent a Change in a Disclosed Term

Plaintiffs present three arguments in support of their position that advance notice may be required even where no disclosed term is changed: (i) Regulation Z contemplates that advance notice may be required where no term is changed; (ii) absurd outcomes would result if advance notice were required only where a disclosed term had been changed; and (iii) the Contracts themselves establish that their terms may be modified absent express, written change. (Pl. Opp. 17-20). The Court is unpersuaded.

*First*, Plaintiffs claim that Regulation Z contains two provisions that expressly contemplate providing advance notice even where no term of a credit card agreement has changed: 12 C.F.R. § 1026.5(e) and § 1026.9(c)(2). (Pl. Opp. 8). To begin, § 1026.5 provides parameters for certain mandated

disclosures, including account-opening disclosures.  Subsection (e) of that provision states that, "If a disclosure becomes inaccurate because of an event that occurs after the creditor mails or delivers the disclosures, the resulting inaccuracy is not a violation of this part, although new disclosures may be required under § 1026.9(c)."  12 C.F.R. § 1026.5(e).  Plaintiffs argue that § 1026.5(e) requires § 1026.9(c) advance notice where an *event*, as distinguished from a change in terms, renders an earlier disclosure inaccurate. (Pl. Opp. 18-20).  According to Plaintiffs, Chase's decision to change the classification of cryptocurrency acquisitions from purchases to cash advances was an event that rendered the account-opening disclosures inaccurate.  (*Id.*).

Plaintiffs misinterpret § 1026.5(e).  The subsection does not create an independent duty to provide advance notice if an event makes a disclosure inaccurate.  Instead, it states that advance notice *may be necessary* under § 1026.9(c).  Further, § 1026.9(c) requires advance notice only where there has been a "change in *terms*."  12 C.F.R. § 1026.9(c) (emphasis added).  No such change in terms is alleged to have occurred here.

Nor does § 1026.9(c)(2) support Plaintiffs' argument that advance notice may be required absent a change in written terms.  Plaintiffs contrast § 1026.9(c)(2), which requires advance written notice of significant changes to "*account* terms," with 15 U.S.C. § 1637(i)(2), which requires advance notice of significant changes to "the terms … of the cardholder agreement."  (Pl. Opp. 20 (emphasis in original)).  Read together, Plaintiffs claim that these provisions demonstrate that "a change in *credit* 'terms' may occur without any change in

*contractual* 'terms' occurring." (*Id.* (emphases in original)). Plaintiffs' logic is less-than-crystalline, but appears to suggest that "account terms" refers to something other than the contractual terms that compose a credit card agreement.[5]

Plaintiffs' attempt to wring significance from § 1026.9(c)(2)'s use of the phrase "account terms" comes up dry. Section 1026.9(c)(2) defines account terms to be those terms required to be disclosed under §§ 1026.6(b)(1), (2), and (4), which are themselves disclosed terms present in the credit card agreement. Thus, at least as relevant here, there is no meaningful distinction between "account terms" and the disclosed terms of a contractual agreement. In other words, to the extent Plaintiffs seek to allege that "account terms" changed, they fail to do so because they do not allege that any disclosed terms changed.

*Second*, Plaintiffs claim that absurd outcomes would result if advance notice were required only for changes to written terms: "*all* [credit card] *issuers could perpetually avoid the requirement to notify cardholders of 'significant' financial changes, simply by declining to amend their initial disclosures.*" (Pl.

---

[5]     Plaintiffs also cite to three cases for the proposition that "[t]he Bureau requires that the 'specific change' in financial terms, and any causal 'triggers,' be clearly and accurately disclosed in the initial disclosure, or in some subsequent disclosure": (i) *Chase Bank USA, N.A.* v. *McCoy*, 562 U.S. 195, 198 (2011); (ii) *Swanson* v. *Bank of Am.*, N.A., 566 F. Supp. 2d 821, 825-26 (N.D. Ill. 2008), *aff'd*, 559 F.3d 653 (7th Cir. 2009); and (iii) *Williams* v. *Wash. Mut. Bank*, No. 07 Civ. 2418 (WBS), 2008 WL 115097, at *1 (E.D. Cal. Jan. 11, 2008). Plaintiffs do not provide parenthetical explanations of how these cases support their argument. In any event, the cases are inapposite because, unlike here, each addresses a specific change to the terms explicitly set forth in a credit card agreement. *See Swanson*, 566 F. Supp. 2d at 825-26 (examining whether advanced notice was required when a cardholder's interest rate increased following an exceedance of the credit limit and the credit card agreement explicitly allowed a rate increase in such a situation); *McCoy*, 562 U.S. at 197 (examining the same issue); *Williams*, 2008 WL 115097, at *1 (examining an interest rate increase imposed at the discretion of the card issuer, as allowed by the credit card agreement).

Opp. 19 (emphases in original)).  But a credit card user is not left defenseless if a credit card issuer begins to impose new fees without amending the terms of a credit card agreement and accompanying disclosures.  The user may bring a suit for breach of contract, or for violation of TILA's clear and conspicuous disclosure requirement, as Plaintiffs have done here.  In point of fact, the fallacy of Plaintiffs' policy argument is made clear by the very suit that Plaintiffs have brought.

*Finally*, Plaintiffs claim that the Contracts themselves contemplate that the terms may be changed without express amendment of the documents.  (Pl. Opp. 20).  To support this point, Plaintiffs cite to a provision of the Contracts that states "APRs or other terms may also change without amendment, for example when the Prime Rate changes.  See the Variable Rate section for details."  (Am. Compl., Ex. A at 4).  The "Variable Rate section," however, provides notice that variable APRs are determined based on figures published by the *Wall Street Journal*, and thus are subject to constant fluctuation that is entirely out of Chase's control.  (*Id.* at 5).  Contrary to Plaintiffs' representation, the Contracts do not imply that Chase could modify the terms of the Contracts through a course of action as opposed to an express written amendment.

### iii.    Plaintiffs Fail to State a Claim That They Were Entitled to Advance Notice

Plaintiffs' advance notice claim is premised on the assumption that Chase was required to provide advance notice before it classified cryptocurrency acquisitions as cash advances.  Plaintiffs do not allege an actual change to any term of the Contracts.  At all relevant times, the

Contracts identified two types of transactions: purchases and cash advances. The Contracts provided that "cash-like transactions" would constitute cash advances, and set forth an unaltered definition of which transactions were "cash-like." "The only change alleged is how [Chase] classified transactions acquiring cryptocurrency among those enumerated types of transactions; [Chase] first classified them as purchases and then as cash advances." *Eckhardt*, 2019 WL 1177954, at *4.

The change in classification is either a violation of the terms of the Contracts (if Plaintiffs' breach of contract claim succeeds) or a change in how the terms were interpreted and applied to cryptocurrency transactions (if Plaintiffs' breach of contract claim fails). It is not a change in disclosed terms. Because Plaintiffs do not allege that a significant change in a disclosed terms occurred, they fail to state a claim that Chase violated TILA's and Regulation Z's advance notice requirement. Accordingly, the claim is dismissed.

### 4. The Court Grants Defendant's Motion to Dismiss Plaintiffs' Claim That Chase Violated TILA's Accurate Periodic Statements Requirement

Plaintiffs' final claim is alleged in the alternative: if acquisitions of cryptocurrency were indeed cash advances under the terms of the Contracts, then the account statements before January 23, 2018, that classified those acquisitions as purchases would be inaccurate, in violation of TILA and Regulation Z. (Am. Compl. ¶¶ 107-12). Chase argues that Plaintiffs have failed to state a claim, because the periodic statements accurately provided Plaintiffs' legal obligation with respect to each transaction.

TILA requires credit card issuers to provide periodic account statements to card holders following each billing cycle. 15 U.S.C. § 1637(b). Both TILA and Regulation Z set forth pieces of information that must appear in the account statement, to the extent they are applicable. 15 U.S.C. § 1637(b); 12 C.F.R. § 1026.7(b). Together, these pieces of information "describe exactly what was applied to the cardholder's account during the billing cycle at issue, such as transactions, interest rates, fees, and credits." *Eckhardt*, 2019 WL 1177954, at *8 (citing 15 U.S.C. § 1637(b); 12 C.F.R. § 1026.7(b)).

Plaintiffs concede that Chase provided periodic account statements, and Plaintiffs do not allege that those statements failed to state accurately any singular piece of information required under TILA or Regulation Z. Instead, Plaintiffs claim that the periodic statements violated a general requirement that all disclosures, including periodic account statements, "reflect the terms of the legal obligation between the parties," as set forth in 12 C.F.R. § 1026.5(c). (Pl. Opp. 22-24). If Chase is correct, and acquisitions of cryptocurrency are cash advances under the Contracts, then Plaintiffs say any periodic statements classifying cryptocurrency as purchases inaccurately stated Plaintiffs' legal obligations.

Plaintiffs misunderstand the scope of information that periodic statements are required to disclose. Unlike credit card agreements or account-opening disclosures, periodic statements do not provide cardholders with a complete record of all obligations between the parties. Instead, periodic statements provide cardholders with the outstanding balance owed on their

24

account, and information about each individual credit transaction, fee, charge, and rate, incurred over the previous billing cycle. 15 U.S.C. § 1637(b); 12 C.F.R. § 1026.7(b). Accepting Plaintiffs' factual allegations as true, the periodic statements accurately provided this information. The disputed cryptocurrency acquisitions were listed individually, and each transaction that was classified as a purchase was subjected to the rates and fees appropriate for purchase transactions. Plaintiffs were obligated to pay the amount disclosed and calculated in the periodic statements; they were not made to pay cash advance rates for transactions classified as purchases within the statements. Thus, the periodic statements disclosed the required information and accurately reflected Plaintiffs' legal obligation to Chase with respect to each transaction — what Plaintiffs were required to pay Chase. Plaintiffs' claim to the contrary is dismissed.

## CONCLUSION

For the foregoing reasons, Chase's motion to dismiss is GRANTED as to Plaintiffs' advance notice claim and accurate periodic account statements claim. The motion is DENIED as to Plaintiffs' breach of contract claim and clear and conspicuous disclosure claim.[6] The Clerk of Court is directed to terminate the motion at docket entry 39.

---

[6]    In a footnote in Chase's memorandum of law in support of its motion to dismiss, Chase argues that Plaintiffs' request for declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 should be dismissed for the same reasons the breach of contract claim should be dismissed. (Def. Br. 19 n.4). For the reasons stated in Section B.1 of the opinion, the Court disagrees and denies the request to dismiss the request for declaratory relief.

Chase is ordered to file an answer to Plaintiffs' complaint on or before **August 22, 2019**. The parties are ordered to submit a proposed case management plan and joint letter to the Court on or before **September 12, 2019**.

SO ORDERED.

Dated:     August 1, 2019
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge