MEMO ENDORSED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRADY TUCKER, RYAN HILTON, and STANTON SMITH, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>CHASE BANK USA, N.A.,<br><br>　　　　　　　　　Defendant. | Case No. 1:18-cv-03155 (KPF)<br><br>**STIPULATED PRODUCTION PROTOCOL FOR ELECTRONICALLY STORED INFORMATION AND OTHER DISCOVERY** |

**I.　GENERAL PROVISIONS**

These specifications apply both to electronically stored information ("ESI") and to documents originating as paper, which are also to be produced in electronic form in this Litigation as provided below. The parties will make reasonable efforts to prepare responsive and non-privileged paper documents and ESI for production in accordance with the agreed-upon specifications set forth below.

　　　1.　**Security**. Both parties will make reasonable efforts to ensure that any productions made are free from viruses and provided on encrypted media for submission. The producing party shall provide the necessary information to decrypt any productions to the receiving party by a separate e-mail or letter.

　　　2.　**Confidentiality Designation**. Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order entered in this matter.

　　　3.　**Non-Standard Files**. The format of production of non-standard electronic files, large oversized documents, and other files for which production pursuant to the standard format

specified below would be impracticable will be discussed before production to determine the optimal production format.

4. **Searching**. To the extent that keyword or other methodologies are used in limiting the universe of potentially responsive documents to be reviewed, the parties shall meet and confer to try to develop a mutually agreeable list of search terms and protocols prior to the production of documents. Any search methodology employed must support the use of stemmed searches (e.g., using ~ to include variations on a keyword) and Boolean searches.

5. **Deduplication**. To the extent that exact duplicate documents (based on MD5 Hash Value) reside within a party's ESI dataset, each party is only required to produce a single copy of a responsive document or record. "Exact duplicate" shall mean bit-for-bit identically with document content. Documents will be excluded from the production set on the basis of duplication only where an entire family of documents is duplicative of an entire family of documents being produced.

II. **PRODUCTION OF DOCUMENTS ORIGINATING AS PAPER**

For documents originating in paper format, the following specifications should be used for their production:

1. **TIFFs**. Images should be produced as single-page, black and white TIFF group IV format imaged at 300 dpi. TIFFs shall show all text and images that would be visible to a user of the paper document. Parties reserve the right to request color images.

2. **Unique IDs**. Each image should have a unique filename, which is the Bates number of the page.

    a) The first four (4) characters of the filename will reflect a unique alphanumeric designation identifying the party making production, with, for example:

        i. Defendant Chase Bank USA, N.A. denoted as "CHAS";

        ii.        Plaintiff Brady Tucker denoted as "TUCK";

        iii.       Plaintiff Ryan Hilton denoted as "HILT"; and

        iv.       Plaintiff Stanton Smith denoted as "SMIT".

b) The final nine (9) characters, separated from the initial identifier by an underscore, will be a unique, consecutive numeric value assigned to the top-level item by the producing party (*e.g.,* first page of a document). This value shall be padded with leading zeroes as needed to preserve its length.

c) By way of example, the first page of a 6 page scanned document would be ACME_000000123, and the last page would be ACME_000000128;

d) This format of the Bates identifier must remain consistent across all productions. The number of digits in the numeric portion and characters in the alphanumeric portion of the identifier should not change in subsequent productions, nor should spaces, hyphens, or other separators be added or deleted except as set out above.

3. **Concordance Delimited Load File/Opticon Cross-Reference File**. Documents should be provided with a Concordance Delimited File and an Opticon Cross-Reference File. Every TIFF in each production delivery must be referenced in the production's corresponding Load File. The total number of images referenced in a production delivery's Load File should match the total number of TIFF files in the production.

    a) **The Concordance Delimited Load File** should contain available fielded data, including Beginning Bates Number, Ending Bates Number and Number of Pages. For example:

þBegDocþ¶þEndDocþ¶þBegAttachþ¶þEndAttachþ¶þPagesþ¶þCDVolþ¶þCustodianþ

    b) **Delimiter File**. The available fielded data and/or electronic metadata should be provided in the following format:

   i. fields should be delimited by the default Concordance field delimiter for ACII character 20 (¶);

   ii. string values within the fields file should be enclosed with a text delimiter ASCII character 254 (þ);

   iii. the first line should contain objective coding and/or electronic file metadata headers and below the first line there should be exactly one line for each document;

   iv. each row of objective coding and/or electronic file metadata must contain the same amount of fields as the header row; and

   v. multi-values should be separated by a semicolon (;).

 c) Examples of appropriate Opticon Cross-Reference files are:

- MSC000001,MSC001,D:\MSC001\IMAGES\001\MSC000001.TIF,Y,,,3
- MSC000002,MSC001,D:\MSC001\IMAGES\001\MSC000002.TIF,,,,
- MSC000003,MSC001,D:\MSC001\IMAGES\001\MSC000003.TIF,,,,
- MSC000004,MSC001,D:\MSC001\IMAGES\001\MSC000004.TIF,Y,,,2
- MSC000005,MSC001,D:\MSC001\IMAGES\001\MSC000005.TIF,,,,

 d) **OCR Text Files**. Text shall be provided on a document level in an appropriately formatted text file (.txt) that is named to match the first bates number of the document.

 e) **Unitizing Documents**. In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). The parties will make their best efforts to have their vendors logically unitize documents correctly, maintain Parent-Child Relationships (discussed below), and will commit to address situations of improperly

unitized documents or circumstances where Parent-Child Relationships have not been maintained and produced.

**III.   PRODUCTION OF EMAIL AND ELECTRONIC DOCUMENTS**

For information originating in electronic format, the following specifications should be used for their production:

1.   **Format.**  Except as otherwise noted below, ESI shall be produced as single-page, black and white TIFF group IV format imaged at 300 dpi.  TIFFs shall show all text and images that would be visible to a user of the paper document.  Parties reserve the right to request color images.  Microsoft Access, Excel, or .csv files—or other spreadsheet or database files—shall be produced in their native form.  A placeholder TIFF image shall be produced with any such file produced in native, containing language indicating the document's Bates number, its confidentiality designation, its file name (including extension), and the text "Document Produced in Native Format."  The parties should further meet and confer regarding whether any data is encrypted or password-protected (in which case the producing party shall provide a means to gain access to those files), or requires proprietary or legacy software for review.  If ESI requires redaction because of a privilege assertion, it shall be produced as described in paragraph 3 below.

2.   Any redacted document will be produced in TIFF Format as outlined above.  Redactions will be "burned" into the image.  No extracted text will be produced; however, post-redaction OCR must be produced within the appropriate supporting text files.

3.   **Native ESI Unique IDs**.  ESI shall be identified by naming the ESI to correspond to a Bates identifier according to the following protocol:

    a)   The first four (4) characters of the filename will reflect a unique alphanumeric designation identifying the party making production, with, for example:

        i.   Defendant Chase Bank USA, N.A. denoted as "CHAS";

5

        ii.        Plaintiff Brady Tucker denoted as "TUCK";

        iii.       Plaintiff Ryan Hilton denoted as "HILT"; and

        iv.       Plaintiff Stanton Smith denoted as "SMIT".

b)    The final nine (9) characters, separated from the initial identifier by an underscore, will be a unique, consecutive numeric value assigned to the top-level item by the producing party (*e.g.,* first page of a document). This value shall be padded with leading zeroes as needed to preserve its length.

c)    By way of example, the first page of a 6 page scanned document would be ACME_000000123, and the last page would be ACME_000000128;

d)    This format of the Bates identifier must remain consistent across all productions. The number of digits in the numeric portion and characters in the alphanumeric portion of the identifier should not change in subsequent productions, nor should spaces, hyphens, or other separators be added or deleted except as set out above.

e)    The native ESI production should also include Concordance delimited load files containing the metadata associated with each electronic document, along with the extracted text and a link to the produced native file.

4.    **Originating Source**. Electronic documents should be produced in such fashion as to identify the location (i.e., the network file folder, hard drive, back-up tape or other location) where the documents are stored and, where applicable, the natural person in whose possession they were found (or on whose hardware device they reside or are stored). If the storage device was a file share or work group folder, that should be specified as well.

5.    **Parent-Child Relationships**. Attachments, enclosures, and/or exhibits to any parent document should also be produced sequentially and with reference to the respective parent document (and vice-versa).

6. **Concordance Delimited Text File / Metadata**. Using the delimiters detailed above, the Concordance Delimited Text file applicable to ESI should also contain the following extracted metadata fields:

| Field | Description |
| --- | --- |
| BEG_NO | Beginning Bates Number of the Document |
| END_NO | Ending Bates Number of the Document |
| ATTACH_RANGE | Attachment Range for Parent and Children |
| CUSTODIAN | Custodian of the Document Produced |
| FILE_EXT | Record Extension (e.g., .MSG, .DOC, .XLSX, etc.) |
| FILE_NAME | Original File Name |
| HASH | MD5 Hash |
| DATE_LAST_MOD | Date Last Modified |
| TIME_LAST_MOD | Time Last Modified (UTC) |
| DATE_SENT | Date Sent |
| TIME_SENT | Time Sent (UTC) |
| DATE_RCVD | Date Received |
| TIME_RCVD | Time Received (UTC) |
| FROM | Sender (for emails) |
| AUTHOR | Author (of document or email) |
| TO | Recipient(s) of an email |
| CC | Copyee(s) of an email |
| BCC | Blind Copyee(s) of an email |
| TITLE/SUBJECT | Email Subject |

If a producing party produces electronic documents without some or all of the metadata that was contained in the Redacted ESI, the producing party shall inform all other parties of this fact, in writing, at or before the time of production.

7. **Extracted Text Files**. For each ESI item, a text file (not OCR text) should be provided along with the native file or TIFF (except in the case of Redacted ESI). The full text of native files should be extracted directly from the native file and should be delivered on an ESI item level according to the specifications above similar to paper documents.

IV.     **PRODUCTION OF STRUCTURED DATA**

The parties will meet and confer regarding the production of data, reports or information otherwise derived from a programmatic database prior to any productions.

V.     **DELIVERY OF PRODUCTIONS**

Any production under 10 GBs in total size may be produced via SFTP, with credentials to be provided by the producing party. Productions that exceed 10 GBs shall be produced on a hard drive. Upon delivery of each production, the producing party shall confirm (in correspondence or on the media):

- Date of production;
- Name of producing party or parties;
- Volume of production;
- Bates Range of production;
- Document Count; and
- Support Files Included.

VI.     **PRIVILEGE AND WORK PRODUCT CLAIMS**

The inadvertent production of privileged or protected documents or information shall be governed by the Protective Order entered by the Court in this litigation. In an effort to avoid unnecessary expense and burden, the parties agree that, for documents redacted or withheld from production on the basis of attorney-client privilege, work product doctrine and/or any other applicable privilege, the producing party will prepare a summary log containing, for each document claimed as privileged, an export of all metadata fields listed above (as agreed upon by the parties) to the extent such information exists and has not been suppressed or redacted for privilege, a summary of the information redacted or withheld, as well as the basis for the claim of privilege. If the requesting party requires further information, it shall explain in writing the need for such information and identify, by Bates number or other unique identifier, each document for which it seeks this information. Within fifteen (15) days of such a request, the producing party

must either (i) provide the requested information or (ii) challenge the request. If a party challenges a request for further information, the parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the parties must request a conference with the Court before any motions may be filed.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

Dated: October 16, 2019         **FINKELSTEIN & KRINSK LLP**

David J. Harris, Jr. (admitted *pro hac vice*)
550 West C Street, Suite 1760
San Diego, CA 92101
(619) 238-1333 (Telephone)
(619) 238-5425 (Facsimile)
djh@classactionlaw.com

_____s/ David J. Harris, Jr._____
David J. Harris, Jr.

*Attorneys for Plaintiff and the Putative Class*

Dated: October 16, 2019         **WILMER CUTLER PICKERING
            HALE AND DORR LLP**

Noah A. Levine
Stephanie Simon
7 World Trade Center
250 Greenwich Street
New York, NY 10007
212-230-8875 (t)
212-230-8888 (f)
noah.levine@wilmerhale.com
stephanie.simon@wilmerhale.com

_____s/ Noah A. Levine_____
Noah A. Levine

*Attorneys for Defendant JPMorgan Chase Bank, N.A.
(f/k/a/ Chase Bank USA, N.A.)*

SO ORDERED.

Dated:   October 17, 2019
         New York, New York

SO ORDERED.

*Katherine Polk Failla*

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE