**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRADY TUCKER, RYAN HILTON and STANTON SMITH, Individually and On Behalf of All Others Similarly Situated,<br><br>           Plaintiffs,<br><br>   v.<br><br>CHASE BANK USA, N.A.,<br><br>           Defendant. | Case No. 1:18-cv-03155-KPF<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

**TABLE OF CONTENTS**

I.    INTRODUCTION…………………………………………………………..…....1

II.   SUMMARY OF THE ACTION AND SETTLEMENT….…………………….….……3

      A.  Procedural History ……………………………………………………………3

      B.  Summary of the Settlement's Key Terms ……………………………………6

          1.  Relief to Class Members ……………………………………………6

          2.  Class Notice and Settlement Administration …………………………6

              a.  Notice………………………………………………………...6

              b.  Administration ……………………………………………7

          3.  Objection and Opt-Out Provisions………………………………………7

          4.  Release Provisions …………………………………………………8

          5.  Attorneys' Fees, Expenses, and Class Representative Service Awards ………8

          6.  No Admission of Liability or the Absence Thereof …………………………...8

III.  PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE …………9

      A.  Standards for Preliminary Approval ……..………………………………………9

      B.  The Arms-Length Settlement Negotiated by the Parties Receives a Presumption of Fairness ………………………..…………………………………………………10

      C.  The Settlement Is Well Within The Range Of Likely Approval……………..………12

IV.   THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23…………...………14

      A.  Numerosity...…………………………………………………………………16

      B.  Commonality …..…………………………………………………………..16

      C.  Typicality ………………………………………...……………………………17

      D.  Adequacy ………………………………………………………………...…18

      E.  Common Questions Predominate, and the Class Action Mechanism is Superior to Other Methods of Adjudication …………………..…………………………………19

V.    THE PROPOSED CLASS NOTICE PLAN COMPORTS WITH DUE PROCESS ……20

VI.   CONCLUSION ……………………………………………………………21

# TABLE OF AUTHORITIES

**Cases**

*Amchem Products, Inc., v. Windsor*
    521 U.S. 591, 620 (1997) …………………………………………………….……..passim

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*
    222 F.3d 52, 60 (2d Cir.2000) …………………………………………………...……18

*Carson v. Am. Brands, Inc.*
    450 U.S. 79, 88 n.14 (1981) …………………………………………………………9

*City of Detroit v. Grinnell Corp.*
    495 F.2d 448, 463 (2d. Cir. 1974) …………………………………………………..12

*Clark v. Ecolab Inc.*
    2010 WL 1948198 (S.D.N.Y. May 11, 2010) ………………………………………11

*Consolidated Rail Corp. v. Town of Hyde Park*
    47 F.3d 473 (2d Cir. 1995) …………………………………………………………16

*Diaz v. E. Locating Serv. Inc.*
    2010 U.S. Dist. LEXIS 139136 (S.D.N.Y. Nov. 29, 2010) ………………………..11

*Flinn v. FMC Corp.*
    528 F.2d 1169 (4th Cir. 1975) ………………………………………………………11

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*
    903 F.2d 176 (2d Cir. 1990) ………………………………………………………..17

*In re Citigroup, Inc. Sec. Litig.*
    965 F. Supp. 2d 369 (S.D.N.Y. 2013) ...……………………………………………12

*In re Enron Corp. Sec., Derivative & ERISA Litig.*
    586 F,Supp.2d 732 (S.D. Tex. 2008) …………………………………………….….2

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*
    2007 WL 2230177 (S.D.N.Y. Jul. 27, 2007)...…………………………………9, 17, 18

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*
    574 F.3d 29 (2d. Cir. 2009) ………………………………...……………………18

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*
    2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ………………..…………………………2

*In re Linkedin User Privacy Litig.*
    309 F.R.D. 573 (N.D. Cal. 2015) …………………………………………………..13

*In re Marsh ERISA Litig.*
    265 F.R.D. 128 (S.D.N.Y. 2010) ………………………………..……………………12

*In re NASDAQ Market-Makers Antitrust Litig.*
 169 F.R.D. 493 (S.D.N.Y. 1996) …………………………………………………………17

*In re Toys R Us-Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*
 295 F.R.D. 438 (C.D. Cal. 2014) ……………………………………………………………2

*Karvaly v. eBay, Inc.*
 245 F.R.D. 71 (E.D.N.Y. 2007) …………………………………………………….....10

*Lyons v. Marrud, Inc.*
 1972 WL 327 (S.D.N.Y. June 6, 1972) …………………………………………………11

*Minter v. Wells Fargo Bank., N.A.*
 283 F.R.D. 268 (D. Md. 2012) …………………………………………………………..21

*Palacio v. E*TRADE Fin. Corp.*
 2012 U.S. Dist. LEXIS 88019 (S.D.N.Y. June 22, 2012) …………….………………9, 11

*Parkinson v. Hyundai Motor Am.*
 258 F.R.D. 580 (C.D. Cal. 2008) ……………………..…………………………………16

*Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corporation*
 323 F.Supp. 364 (E.D. Pa. 1970) …………………………………………………………10

*Phillips Petrol. Co. v. Shutts*
 472 U.S 797 (1985) …………………………………………………………...…..…21

*Spann v. AOL Time Warner, Inc.*
 2005 U.S. Dist. LEXIS 10848 (S.D.N.Y. June 7, 2005) …………………………………9

*Thompson v. Metro Life Ins. Co.*
 216 F.R.D. 55 (S.D.N.Y. 2003) …………………………………………………….....12

*Tyson Foods, Inc. v. Bouaphakeo*
 136 S. Ct. 1036 (2016) …………………………………………………………………19

*U.S. v. Ulbricht*
 31 F.Supp.3d 540 (S.D.N.Y. 2014) …………………………………………….....14

*Wal-Mart Stores, Inc. v. Dukes*
 131 S. Ct. 2541 (2011) …………………………………………………...…………16

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*
 396 F.3d 96 (2d Cir. 2005) ………………………………………………………………9

*Weinberger v. Kendrick*
 698 F.2d 61 (2d Cir. 1982) …………………………………...……………………15

*Wright v. Stern*
 553 F. Supp. 2d 337 (S.D.N.Y. 2008) ……………………………………………………9

**Rules**

Fed. R. Civ. P. 23(a) …………………………………………………….…………………passim

Fed R. Civ. P. 23(b)(3) …………………………………………………………………..passim

Fed. R. Civ. P. 23(c) ………………………...…………………………………………..1, 20

Fed. R. Civ. P. 23(e) …………………………………………………………………..passim

**Other Authorities**

5 James Wm. Moore, Moore's Federal Practice (3d ed. 2002) …………………………………10

Manual for Complex Litigation (Fourth) (2004) ………………………...………………10, 15

Newberg on Class Actions (Fourth) (2002) § 11.41 …………………..…………………………9, 10

Pursuant to Federal Rules of Civil Procedure 23(c)(2) and 23(e), Plaintiffs and proposed Class Representatives Brady Tucker, Ryan Hilton, and Stanton Smith ("Plaintiffs") respectfully submit this Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.[1]

## I.    INTRODUCTION

Plaintiffs and Defendant JPMorgan Chase Bank, N.A. (formerly known as Chase Bank USA, N.A.) ("Chase") have agreed to settle this case for two million, five hundred thousand U.S. dollars ($2,500,000.00).  By the instant motion, Plaintiffs respectfully request that this Court take the first step in its approval process, and enter an order: (i) granting preliminary approval of the proposed Settlement; (ii) certifying, for settlement purposes only, the proposed Settlement Class; (iii) approving the Parties' proposed forms and methods of giving Notice to the proposed Settlement Class; and (iv) setting deadlines for the sending and publication of the proposed Notices, for the filing of any Class Member objections, for the filing of any opt-out requests, and for the filing of Plaintiffs' motion for final approval and application for attorneys' fees, expenses and service awards.

The proposed Settlement was achieved after more than two years of litigation and settlement negotiations between the Parties.  Plaintiffs and their counsel conducted an intensive investigation in connection with preparing their initial and amended complaints, vigorously fended off Chase's motions to dismiss, propounded substantial formal discovery, and evaluated Class Members' potential damages in this case.  Those efforts have given Plaintiffs and their counsel a

---

[1] Unless otherwise defined herein, capitalized terms have the same meaning as those terms defined in the Settlement Agreement.  *See generally* Declaration of David J. Harris, Jr. in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Harris Decl."), Ex. A (hereinafter "Settlement Agreement" or "Settlement").

thorough understanding of the strengths and weaknesses of their claims, and informed the Parties' thoughtful decisions to accept the proposed Settlement as a fair and reasonable resolution of this Action.

This Settlement represents an outstanding result for Settlement Class Members.  Plaintiffs estimate that the $2.5 million Settlement Fund constitutes more than 95% of the Cash Advance fees charged to Settlement Class Members.  Such a high-percentage recovery stands far above the typical recovery for class actions such as this one.  *See, e.g., In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F,Supp.2d 732, 804 (S.D. Tex. 2008) ("The typical recovery in most class actions generally is three-to-six cents on the dollar."); *In re Toys R Us-Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig*., 295 F.R.D. 438, 454 (C.D. Cal. 2014) (finding recovery of 5% to 30% of potential class damages to be adequate in a consumer class action); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400, 2010 WL 4537550, at *20 (S.D.N.Y. Nov. 8, 2010) ("In cases with estimated damages of less than $50 million, the median settlement was 11.4% of estimated damages for the period 2002 through 2008 and 12% of estimated damages in 2009.").  This Settlement substantially exceeds the normal ranges of judicial approval and thus clearly warrants this Court's preliminary approval.

In addition, the Parties' proposed Notice plan, which provides both direct notice and publication notice to Class Members, satisfies due process and constitutes the best notice practicable.   Pursuant to the Parties' Proposed Preliminary Approval Order (filed contemporaneously herewith), this Court should grant Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, preliminarily certify the proposed Settlement Class under Fed. R. Civ. P. 23(a) and 23(b)(3), and direct that Notice of this Settlement be sent to all Class Members as detailed in the Settlement Agreement.

## II.    SUMMARY OF THE ACTION AND SETTLEMENT

### A.  Procedural History

On April 10, 2018, Plaintiff Brady Tucker filed the initial Class Action Complaint.  Dkt. 1.  Tucker claimed that, when he had originally used his Chase credit-card to buy cryptos on www.coinbase.com, Chase had charged those transactions to his account as credit-card "Purchases."  Dkt. 1, ¶¶21-39.  Tucker alleged that, beginning in late January 2018, Chase began charging his crypto purchases as "Cash Advance" transactions, without prior notice, resulting in finance charges he had not previously incurred.  *Id.*  Tucker alleged that Chase's new Cash Advance charges violated TILA and Regulation Z, which require card issuers to provide 45 days written notice before effecting any "significant change" to cardholders' account terms.  *Id.*

On June 6, 2018, Chase submitted its letter to the Court regarding Chase's anticipated Rule 12(b)(6) motion to dismiss.  Dkt. 17.

On June 11, 2018, Tucker submitted his responsive letter to this Court regarding Chase's anticipated motion to dismiss.  Dkt. 18.  Later that day, the Court acknowledged both sides' letters regarding Chase's anticipated motion to dismiss.  Dkt. 19.  The Court indicated that it would address the parties' pre-motion arguments at the initial pretrial conference scheduled for June 27, 2018.  *Id.* at 4.

On June 27, 2018, the Court held its initial pretrial conference, and heard oral arguments regarding Chase's anticipated motion to dismiss.  Dkt. 21.

On July 27, 2018, Chase filed a Rule 12(b)(6) motion to dismiss, arguing that Tucker had failed to allege that Chase's conduct constituted a "significant change" to the "terms" of its cardholder agreements within the meaning of TILA and Regulation Z.  Dkt. 24.

On August 17, 2018, pursuant to Fed. R. Civ. P. 15(a)(1)(B), Tucker and new Plaintiffs Ryan Hilton and Stanton Smith filed their First Amended Class Action Complaint ("FAC"), alleging new facts concerning Chase's and third-party actors' relevant conduct.  The FAC presented new, alternative legal theories under TILA and Regulation Z, the common law, and the federal Declaratory Judgment Act.  *See generally* Dkt. 30.

On November 2, 2018, Chase moved to dismiss all claims alleged in the FAC, pursuant to Fed. R. Civ. P. 12(b)(6).  Chase argued, *inter alia*, that Plaintiffs' and Class Members' Cryptocurrency Transactions were properly disclosed and treated as "cash-like transactions" because cryptocurrency "is universally recognized as a medium of exchange that operates like money (in other words, like cash)."  *See* Dkt. 40 at 12 (collecting sources).

On November 30, 2018, Plaintiffs filed a memorandum of law in opposition to Chase's motion to dismiss, arguing that all five of Plaintiffs' claims for breach of contract, violations of TILA and Regulation Z, as well as declaratory relief, should be sustained.  Dkt. 42.

On December 14, 2018, Chase filed a reply brief in further support of its motion to dismiss. Dkt. 43.

On August 1, 2019, the Court entered an Opinion & Order granting in part and denying in part Chase's motion to dismiss the FAC.  *See generally* Dkt. 47.  The Court dismissed Class claims premised on TILA's and Regulation Z's "subsequent notice" requirements, and the requirement for issuers to provide accurate periodic statements.  *Id.*  The Court sustained Plaintiffs' and the Class's claims for breach of contract, declaratory relief, and violation of TILA's "clear and conspicuous" disclosure requirements.  *Id.*

On August 22, 2019, Chase filed its Answer to the FAC, asserting numerous defenses to Plaintiffs' and the Class's surviving claims.  Dkt. 49.

On September 12, 2019, the Parties filed a Joint Letter and Civil Case Management Plan. Dkt. 50; Dkt. 51.  The Court subsequently endorsed the Parties' proposals.  Dkt. 52.

Between September 2019 and March 2020, the Parties engaged in substantial, formal discovery efforts in preparation for class certification and summary judgment.  The Parties negotiated a stipulated protective order and ESI Protocol to govern discovery, which the Court endorsed. Dkt. 55; Dkt. 56. The Parties propounded numerous interrogatories, requests for admissions, and requests for production of documents and electronically stored information ("ESI").  The Parties also engaged in extensive written and oral negotiations to agree upon appropriate ESI date ranges, custodians, and search terms to identify potentially relevant information.  In conjunction with formal discovery efforts, as well as informal exchanges of relevant information, the Parties evaluated their ADR options, eventually agreeing to engage in meaningful settlement negotiations.

On March 10, 2020, the Parties filed a stipulated letter, notifying the Court that they had reached an agreement in principle to settle this Action on a Class-wide basis.  Dkt. 57.  The Court entered an Order giving the Parties 75 days to file a Stipulation of Settlement.  Dkt. 58.

Between March 2020 and May 2020, the Parties thoroughly negotiated all of the remaining, specific terms of their agreement in principle in order to arrive at the Settlement Agreement now presented to this Court.

On May 22, 2020, the Parties executed their finalized Settlement Agreement to resolve this Action on a Class-wide basis.

### B.  Summary the Settlement's Key Terms

#### 1.  Relief to Class Members

In full and final resolution of all Released Claims in this Action, which have been or could have been asserted by Class Members against the Released Parties, Chase shall deposit two million, five hundred thousand U.S. dollars ($2,500,000.00) into a Settlement Fund Account, as set forth in the Settlement Agreement.  *See* Harris Decl., Ex. A ("Settlement Agreement").

#### 2.  Class Notice and Settlement Administration

##### a.  Notice

Within forty (40) calendar days after entry of the Preliminary Approval Order, the third party Administrator, KCC, LLC ("Administrator" or "KCC") will transmit the proposed Email Notice directly to all Settlement Class Members for whom Chase has provided the Administrator with an email address.  *See* Settlement § VIII, ¶59(a); Harris Decl., Ex. B (Email Notice document). The Administrator will also mail the proposed Postcard Notice directly to all Settlement Class Members for whom Chase has *not* provided an email address, or for whom the Administrator receives notice of an undeliverable email.  *See* Settlement § VIII, ¶59(b); Harris Decl., Ex. C (Postcard Notice document).  The Postcard Notices will be mailed after the Administrator cross-references and updates the mailing addresses provided by Chase with the National Change of Address Database, and uses other commercially reasonable means to obtain any updated address information for Settlement Class Members.  *Id.*

The Administrator shall also maintain a website containing the FAC, the Long-Form Notice document, and any motions or orders relating to Preliminary Approval or Final Approval of the Settlement.  Settlement § VIII, ¶59(c).  The Settlement website will remain operational until at least thirty (30) calendar days after the Court's Final Approval Order.  *Id.*  Additionally, the

Administrator will send the proposed Long-Form Notice by mail or email to any Class Member who requests a copy. *Id.*

The Class Notice documents describe all of the following in plain English: the terms of the Settlement; the amounts of attorneys' fees, expenses, and class representative service awards that may be sought; the procedures for objecting to or opting out of the Settlement; the methods for calculating and distributing Class Member awards; and the time and place of the Final Approval hearing. *See generally* Harris Decl., Ex. B (Email Notice); Harris Decl., Ex. C. (Postcard Notice); Harris Decl., Ex. D (Long-Form Notice). The Parties' proposed Notice program fairly apprises Class Members of the Settlement, as well as their various options for participating in or otherwise responding to the Settlement.

### b. Administration

The Administrator, KCC, will administer distribution of the Net Settlement Amount pursuant to the Parties' Settlement Agreement. *See* Settlement § II, ¶2; *see generally id.* at §§ VII and XIV. In accordance with the Settlement Agreement, Chase will deposit $2.5 million into an interest-bearing, Settlement Fund Account held by an FDIC-insured or NCUA-insured financial institution, with all interest to accrue for the benefit of the Settlement Class. Settlement § IV, ¶47; *id.* at § XII, ¶80. Once the Settlement becomes final following entry of the Court's Final Approval order and judgment, no monies will revert back to Chase. Settlement § XV, ¶97. All Settlement Administration Costs, estimated at $100,000, will be paid from the Settlement Fund Account. *Id.* at § IV, ¶47.

### 3. Objection and Opt-Out Provisions

Any Settlement Class Member who wishes to object to the fairness of the Settlement must electronically file any such objection with the Court, or mail any such objection to the Clerk of the

Court (with copies to Class Counsel and Chase's counsel) on or before the Objection Deadline set forth in the Notices. *See generally* Settlement §§ IX and X, ¶¶64-78. Any Settlement Class Member who does not file a timely objection to the Settlement will be foreclosed from seeking adjudication or review of the Settlement by appeal or otherwise. *Id.*

Any Class Member who wishes to be excluded from the Settlement may submit a written Opt-Out request to the Administrator, postmarked no later than the Opt-Out Deadline set forth in the Notices. *Id.*

### 4. Release Provisions

Upon the Effective Date noted in the Settlement, Plaintiffs and each Settlement Class Member who does not timely exclude themselves from the Settlement Class shall be deemed to have released, waived, and discharged Chase and the Released Parties from all Released Claims, and expressly waived and relinquished the Released Claims. *See generally* Settlement § XVI.

### 5. Attorneys' Fees, Expenses, and Class Representative Service Awards

For their services rendered on behalf of the Settlement Class, Class Counsel intends to seek an attorneys' fee and expense award not to exceed 33% of the Cash Settlement Amount in the aggregate, and Plaintiffs intend to seek Class Representative Service Awards totaling $7,000 each in recognition of their personal efforts in successfully prosecuting and negotiating this Action on behalf of the Settlement Class. *See generally* Settlement § XIII.

### 6. No Admission of Liability or the Absence Thereof

Chase denies any wrongdoing, and this Settlement should in no event be construed or deemed to be evidence or an admission or concession on the part of Chase or the Released Parties with respect to any claim or allegation of fault or liability or wrongdoing, or any infirmity in the defenses that Chase has asserted, or could have asserted in this Action. *See generally* Settlement

8

§ XVIII.  Chase expressly denies that Plaintiffs have asserted any valid claims, and expressly denies any and all allegations of fault, liability, wrongdoing or damages.  *Id.*  Similarly, the Settlement should in no event be construed or deemed to be evidence of an admission or concession on the part of Plaintiffs of any infirmity in any of the claims asserted in the Action, or an admission or concession that Chase's defenses to liability or damages have any merit.  *Id.*

## III.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

### A.  Standards for Preliminary Approval

The law favors settlement, particularly in class actions and other complex cases, because they tie up substantial judicial resources, use up the parties' time and money, and any resolution is often substantially delayed.  *Palacio v. E*TRADE Fin. Corp.*, No. 10 Civ. 4030 (LAP) (DCF), 2012 U.S. Dist. LEXIS 88019, at *7 (S.D.N.Y. June 22, 2012) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)); *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238 (DLC), 2005 U.S. Dist. LEXIS 10848, at *18 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions"); Newberg on Class Actions (Fourth) (2002) § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").  Due to the presumption in favor of settlement, "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *12 (S.D.N.Y. Jul. 27, 2007).  The Supreme Court has cautioned that in reviewing a proposed class settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

Where, as here, parties propose to resolve class action litigation through a class-wide settlement, they must request and obtain the Court's approval.  Fed. R. Civ. P. 23(e); *Wright v.*

9

*Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008).  The typical process for approval of class action settlements is described in the Manual for Complex Litigation (Fourth) §§ 21.632-.634 (2004). The typical steps are: (1) preliminary approval of the proposed settlement, with the option for a hearing; (2) dissemination of direct and/or publication notice of the settlement to all affected class members; and (3) a final approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.  This procedure, commonly used by federal courts, safeguards class members' due process rights. *See* Newberg, § 11.25 (quoting Manual for Complex Litigation (Second) (1985)).

Preliminary approval, however, is merely the prerequisite to giving class members notice of the proposed settlement, which is then "submitted to members of the prospective Class for their acceptance or rejection." *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corporation*, 323 F.Supp. 364, 372 (E.D. Pa. 1970). Accordingly, at this stage of the settlement process, the Court conducts only a preliminary evaluation to determine whether the proposed Settlement shows a reasonable likelihood of final approval.  Fed. R. Civ. P. 23(e)(1); *see also* 5 James Wm. Moore, Moore's Federal Practice ¶¶ 23.83[1], 23-336.2 to 23-339 (3d ed. 2002); *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007) (explaining that preliminary approval should be granted where, as here, "the settlement is the result of serious, informed and non-collusive negotiations and the proposed settlement has no obvious deficiencies").

### B.  The Arms-Length Settlement Negotiated by the Parties Receives a Presumption of Fairness

"In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations

10

between experienced, capable counsel . . . ." *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 U.S. Dist. LEXIS 47036, at *18 (S.D.N.Y. May 11, 2010) (citation omitted). Courts also give significant weight to the parties' judgment that a proposed settlement is fair and reasonable. *See Palacio*, 2012 U.S. Dist. LEXIS 88019, at *8; *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 U.S. Dist. LEXIS 139136, at *10 (S.D.N.Y. Nov. 29, 2010);  *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975) (explaining that "the opinion and recommendation of experienced counsel" should "be given weight in evaluating the proposed settlement").

Before negotiating the Settlement Agreement, the Parties here engaged in vigorous investigation and litigation efforts.  The Parties' extensive factual investigations, legal arguments, and formal and informal discovery efforts throughout the past two years have educated both sides on the relative strengths and weaknesses of their claims and defenses.  It was only after such extensive, diligent undertakings that the Parties began conducting well-informed settlement negotiations.  Negotiations were at all times conducted zealously, and at arms-length, resulting in a resolution that Plaintiffs and Class Counsel believe to be in the Settlement Class's best interests.

The proponents of this Settlement are highly experienced in this type of litigation, and are intimately familiar with the legal and factual issues enmeshed in this case.  *See generally* Harris Decl., Ex. E (Firm Resume for Class Counsel).  As another court once reasoned, "[e]xperienced and competent counsel have assessed . . . the probability of success on the merits. They have concluded that compromise is well-advised and necessary. The parties' decision regarding the respective merits of their positions has an important bearing on this case."  *Lyons v. Marrud, Inc.*, 1972 WL 327, *2 (S.D.N.Y. June 6, 1972).  The same is true here.  In Class Counsel's view, this Settlement provides substantial benefits to Class Members considering the expenses, risks,

difficulties, delays, and uncertainties of continuing through pretrial, trial, and post-trial litigation proceedings.

In addition, the Settlement does not provide preferential treatment to Plaintiffs or any other Class Members. Individual Class Member Awards will be calculated using a proportional payment structure, whereby each Class Member receives a share of the Net Cash Settlement Amount corresponding to the individual Class Member's share of the total Cash Advance Fees that the Settlement Class (excluding Settlement Class Opt-Outs) incurred with respect to Cryptocurrency Transactions. *See generally* Settlement § V. This is an optimal method for automatically allocating the Net Cash Settlement Amount between Settlement Class Members, without the need for Class Members to submit claim forms. Similar plans have repeatedly been approved by courts within the Second Circuit. *See In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145- 46 (S.D.N.Y. 2010).

At bottom, the Parties' Settlement Agreement was the product of thorough, arms-length negotiations, and as such, is entitled to a presumption of fairness. *Thompson v. Metro Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003) ("A strong presumption of fairness attaches to proposed settlements that have been negotiated at arms-length.").

### C.    The Settlement Is Well Within The Range Of Likely Approval

.Courts may consider a number of factors when evaluating the reasonableness of a proposed settlement, including but not limited to: (1) the complexity, expense and likely duration of litigation; (2) the risks of establishing liability and damages; (3) the risks of maintaining a litigation class through trial; and (4) the reasonableness of the financial recovery in light of the risks presented by future litigation. *Id.* (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d. Cir. 1974). The Court should evaluate these factors "in light of the general policy favoring

settlement." *Id.*   Considering all of these factors together, the Parties' proposed Settlement Agreement represents a positive, fair, and reasonable resolution of this Action.

Importantly, this Settlement provides *automatic* cash benefits to Class Members in high proportion to the Cash Advance fees they actually incurred.  The Parties here estimate that the aggregate Cash Advance fees charged to Class Members for their Cryptocurrency purchases total $2,567,252.00.  *See generally* Declaration of Prashant Singh.  The Cash Settlement Amount of $2,500,000.00 thus amounts to over 95% of the Cash Advance fees Class Members actually incurred for their Cryptocurrency Transactions.[2]  In light of the risks that Plaintiffs and the Class could well lose their claims on the merits if they continue with litigation — and consequently, recover *nothing* — the Settlement's guaranteed financial recovery reflects an extremely positive result for Settlement Class Members.  *See, e.g., In re Linkedin User Privacy Litig.,* 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation.").

Indeed, in contrast to the tangible, significant, and immediate cash benefits of this Settlement, the outcome of any further litigation or trial on the merits is uncertain, and could add *years* to this dispute.  Absent the Settlement, Chase would aggressively defend this Action before, during and after trial: litigating discovery disputes, opposing class certification, hiring experts, moving for summary judgment, defending against liability at trial, and potentially appealing any

---

[2] Class Members also incurred some Cash Advance interest charges, but such marginal interest charges are likely far outweighed by the Cash Advance *fees* in most cases.  Ordinary Purchase rates are often almost as high as Cash Advance rates, and marginal interest charges accrue far more slowly than the instant, lump-sum fees attached to these transactions.  Such slow, marginal Cash Advance interest accrual allowed Class Members to mitigate their own interest charges through short-term balance payoffs.

unfavorable judgment.  All the while, Class Members would face numerous risks of obtaining *no recovery whatsoever*.  Even under the best possible litigation scenario, any financial recovery could ultimately be delayed for years by further pretrial, trial and appellate proceedings.  Hence, accepting the Settlement now, and obtaining a sizable cash recovery for Class Members now, makes good sense for all Parties.

The risks of extensive litigation are only heightened by the novelty of some of the factual and legal issues in dispute here.  Plaintiffs and the Class assert that Cryptocurrencies are not "cash-like" items in the context of Chase's credit-card agreements; Chase asserts that Cryptocurrencies are, in fact, "cash-like" items.  Given the complex and emergent nature of Cryptocurrencies in the fields of law, technology, and economics, it is impossible to predict with certainty how the Court or a jury might view Cryptocurrencies in this context.  Class Members' litigation risks are only further heightened by the fact that some courts — including courts within this District — have said that Cryptocurrencies are a form of funds.  *E.g., U.S. v. Ulbricht*, 31 F.Supp.3d 540 (S.D.N.Y. 2014).

When compared to the myriad risks, expenses and delays associated with future litigation, the automatic cash relief provided by this Settlement is more than "fair, reasonable, and adequate" for Class Members.  Fed. R. Civ. P. 23(e)(2).    Thus, preliminary approval of the Parties' Settlement Agreement is clearly proper.

## IV.    THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23

In preliminarily approving the Settlement, the Court must also decide whether to certify the Class for Settlement purposes under Rules 23(a) and 23(b)(3).  *Amchem Products, Inc., v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard case management issues in certifying a settlement class, but the class must satisfy other requirements of Rule 23).  Here, the proposed

Settlement Class, stipulated by the Parties, consists of all current and former Chase credit-card accountholders in the United States to whom Chase charged Cash Advance Fees and/or Cash Advance Interest for Cryptocurrency Transactions made with their Chase consumer credit-card between April 10, 2015 and May 22, 2020 (inclusive).[3]

The Second Circuit has long acknowledged the propriety of certifying classes solely for settlement purposes. *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). Before granting preliminary approval of a class action settlement, however, the Court should determine that the proposed Settlement Class is proper for settlement purposes. *Amchem Prods.*, 521 U.S. at 620; Manual for Complex Litigation (Fourth) § 21.632.

To certify a class, the Court must decide whether the following four threshold requirements of Fed. R. Civ. P. 23(a) are satisfied: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem Prods.*, 521 U.S. at 613. Additionally, the proposed class must satisfy Fed. R. Civ. P. 23(b)(1), (b)(2) or (b)(3). *Id.* at 614. In certifying the Settlement Class, however, the Court need not determine whether the action would present intractable management problems if tried, "for the proposal is that there be no trial." *Id.* at 620; *see also* Fed. R. Civ. P. 23(b)(3)(D).

Here, the proposed Settlement Class meets all of the requirements in both Fed. R. Civ. P. 23(a) and 23(b)(3).

---

[3] Excluded from the Settlement Class are Chase; Chase's officers and directors at all relevant times, as well as members of their immediate families and their legal representatives, heirs, successors or assigns; and any entity in which Chase has or had a controlling interest. Also excluded from the Settlement Class are federal, state, and local governments and all agencies and subdivisions thereunder; and any judge to whom this Action is or has been assigned and any member of her or his immediate family.

### A.  Numerosity

Rule 23(a)(1) requires a class be so large that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1).  Generally speaking, "numerosity is presumed at a level of 40 members" or more.  *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  In this case, based on Chase's database search of the relevant credit-card transaction records, the Parties estimate that the proposed Settlement Class consists of roughly 62,000 Class members.  Such a sizable number of plaintiffs would clearly render joinder "impracticable."

Thus, Rule 23(a)(1)'s numerosity requirement is clearly satisfied.

### B.  Commonality

Rule 23(a)(2) requires that there be one or more questions of law or fact common to the Class.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550-51 (2011); *see also Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 594 (C.D. Cal. 2008) ("The threshold for establishing commonality under Rule 23(a) is relatively low.").

Here, Class Members' claims arise from the same overall contention: that Chase wrongly charged their credit-card purchases of Cryptocurrencies as "Cash Advances" instead of "Purchases," causing them to incur additional finance charges.   At least the following questions of law and fact are common among Class Members: (1) whether buying Cryptocurrencies constitutes a "cash-like transaction" within the meaning of Chase's form cardholder agreements, (2) whether Chase clearly and conspicuously disclosed that buying Cryptocurrencies would constitute a "Cash Advance" transaction; and (3) whether Chase is liable to Class Members for the Cash Advance charges they incurred upon buying Cryptocurrencies.

Rule 23(a)(2)'s commonality requirement is satisfied based on these common questions.

### C. Typicality

Rule 23(a)(3) requires that a class representative's claim be typical of the claims of other class members.  A class representative's claim is typical if each class member's claim arose from the same course of conduct by the defendant, and is based upon the same legal theory.  Typicality does not require all putative class members' claims to be perfectly identical. *EVCI*, 2007 WL 2230177, at *13; *see also In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 511 (S.D.N.Y. 1996) ("Typicality, however, does not require that the situations of the named representatives and the class members be identical.") (collecting cases).  The heart of the typicality requirement is that the plaintiff and each class member have an interest in prevailing on similar legal claims.  Particular factual differences, differences in damages, or even unique defenses against the class representatives do not necessarily render a plaintiff's claims atypical.  *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990).

Plaintiffs here, like other Class Members, allege that they bought Cryptocurrencies using their Chase credit cards, and incurred impermissible Cash Advance charges because Chase deemed their Cryptocurrency Transactions to be "cash-like transactions" within the meaning of their form cardholder agreements.  While Plaintiffs' individual claims may not be *identical* in all aspects to those of other Class Members, Plaintiffs and all other Class Members assert the same legal claims against Chase for breach of contract and for violations of TILA's "clear and conspicuous" disclosure requirements.  Plaintiffs' claims are therefore typical of Class Members' claims, because they must satisfy the same legal elements that other Class Members must satisfy, share similar "Cryptocurrency" theories of liability, and have similar alleged financial injuries.

Hence, Rule 23(a)(3)'s typicality requirement is readily satisfied in this case.

17

### D.  Adequacy

A representative party must fairly and adequately protect the interests of the proposed class. Fed. R. Civ. P. 23(a)(4).  This requirement entails a two-pronged inquiry: first, whether the representative party's interests conflict with the interests of other class members, and second, whether the counsel chosen by the representative party or parties is qualified, experienced, and able to vigorously conduct the proposed litigation.  *EVCI*, 2007 WL 2230177, at *13.  Adequacy requires that a named plaintiff's interests not be "antagonistic to the interest of other members of the class."  *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 60 (2d Cir.2000).  The focus is on uncovering "conflicts of interest between named parties and the class they seek to represent." *Amchem Prods.*, 521 U.S. at 625.  In order to defeat a motion for class certification, however, "the conflict must be fundamental."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d. Cir. 2009) (internal quotes omitted).

Here, Plaintiffs' interests are aligned with, and not antagonistic to, other Class Members' interests.  As explained above, Plaintiffs share similar claims and legal theories as the proposed Class, and this Settlement affords Plaintiffs and other Class Members the same proportional financial recoveries.  Moreover, Plaintiffs have diligently represented all Class Members' interests throughout more than two years of litigation, including fact investigations, pleadings, dispositive motion practice, discovery activities, and extensive settlement negotiations.  *See generally* Declaration of Plaintiff Brady Tucker; Declaration of Plaintiff Ryan Hilton; Declaration of Plaintiff Stanton Smith.  Thus, all three Plaintiffs are adequate to represent the Settlement Class under Rule 23(a)(4).

The Court should also decide whether Class Counsel is "qualified, experienced and able to conduct the litigation." *In re Flag Telecom*, 574 F.3d at 35; *Baffa*, 222 F.3d at 60.  Here, putative

Class Counsel has extensive experience litigating and settling class actions, including consumer class actions, and is well qualified to represent Class Members. *See* Harris Decl., Ex. E (Firm Resume). Class Counsel, along with Plaintiffs, have zealously pursued Class members' claims, and negotiated a favorable, automatic cash recovery for Class Members' in high proportion to their alleged losses. For all of these reasons, the Parties agree that Class Counsel is adequate to represent the putative Class under Rule 23.

### E. Common Questions Predominate, and the Class Action Mechanism is Superior to Other Methods of Adjudication

The Supreme Court has defined the predominance factor as establishing "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation omitted).

The following, "aggregation-enabling" questions predominate over any individualized inquiries in this case: (1) whether buying Cryptocurrencies constitutes a "cash-like transaction" within the meaning of Chase's form cardholder agreements, (2) whether Chase clearly and conspicuously disclosed that buying Cryptocurrencies would constitute a "Cash Advance" transaction; and (3) whether Chase is liable to Class Members for the Cash Advance charges they incurred upon buying Cryptocurrencies.

The Court should also consider whether a Class-wide resolution of this case is "superior" to other methods of adjudication, by considering:

(A) class members' interests in individually prosecuting separate actions;

(B) any other litigation concerning the controversy already begun by class members;

(C) the desirability or undesirability of concentrating the litigation in this forum; and

(D) any likely difficulties in managing the class action.

Fed. R. Civ. P. 23(b)(3).

Here, Class Members have minimal interests in prosecuting separate, individual actions because each Class Member's individual damages are relatively small. This economic reality is reflected by the fact that, to Class Counsels' knowledge (after a reasonable search), there are currently *no other actions* challenging Chase's assessment of Cash Advance fees on cardholders' Cryptocurrency Transactions.

Furthermore, it is desirable to concentrate the litigation in this particular forum, where Chase, and most of the relevant evidence in this case, are located. There are no possible, much less "likely," difficulties in managing this Action on a Class-wide basis because the Settlement ensures that there will be no Class-wide trial for the Court to manage. Fed. R. Civ. P. 23(b)(3)(D); *Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems.").

For all of these reasons, common questions predominate over individual questions in this Action, and the Settlement is clearly superior to other methods for resolving Class Members' claims. The Court should therefore certify the proposed Class for settlement purposes, in accordance with Fed. R. Civ. P. 23(a) and 23(b)(3).

## V.    THE PROPOSED CLASS NOTICE PLAN COMPORTS WITH DUE PROCESS

For Rule 23(b)(3) classes, the Court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Due process requires the best

notice practicable, reasonably calculated to apprise class members of the action, and to give them an opportunity to be heard, or to object or opt out of the proposed settlement. *Phillips Petrol. Co. v. Shutts*, 472 U.S 797, 812 (1985).

Here, the Settlement Administrator, KCC, will send direct notice of this Settlement to each Class Member, based on the contact information contained in Chase's credit-card account records. *See generally* Settlement §§ VII and VIII.; *see also* Harris Decl., Ex. B (Email Notice); Ex. C (Postcard Notice); Ex. D (Long-Form Notice). The Class Notice documents will be delivered via email or regular mail, as appropriate based on the best available addresses for each Class Member. *Id.* In addition, the Notices will be published through a dedicated Settlement Website, which the Administrator will create and maintain throughout the Settlement approval process. *Id.* Such a comprehensive Notice program constitutes the best notice reasonably practicable. *See Minter v. Wells Fargo Bank.*, *N.A.*, 283 F.R.D. 268, 276 (D. Md. 2012) (where "all class members have been identified by name from Defendants' records," and administrator used reasonable methods to update addresses, supplemental notice by publication was not necessary).

Thus, the Parties' proposed Notice program clearly comports with due process, and satisfies all applicable requirements of Fed. R. Civ. P. 23.

## VI.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court preliminarily approve the proposed Settlement Agreement, preliminarily certify the proposed Settlement Class, and direct that Notice be disseminated to all Class Members as set forth in the Settlement Agreement, and in the Parties' proposed Preliminary Approval Order.

Dated: May 26, 2020                                 Respectfully submitted,

                                                         FINKELSTEIN & KRINSK LLP

                                                         By: ___ s/ David J. Harris, Jr. _____
                                                                  David J. Harris, Jr., Esq.

                                                         501 West Broadway, Suite 1260
                                                         San Diego, California 92101-3579
                                                         Telephone: (619) 238-1333
                                                         Facsimile:  (619) 238-5425
                                                         Email: djh@classactionlaw.com

                                                         *Counsel for Plaintiffs and the Putative Class*

22