# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is made and entered into this 22nd day of May, 2020, by and among (1) Plaintiffs (as defined below), individually and on behalf of the Settlement Class (as defined below); and (2) Defendant (as defined below), subject to Court approval as required by Rule 23 of the Federal Rules of Civil Procedure.  As provided herein, Plaintiffs, Class Counsel (as defined below), and Defendant hereby stipulate and agree that, in consideration of the promises and covenants set forth in this Agreement and upon entry by the United States District Court for the Southern District of New York of a Final Approval Order, all claims of the Settlement Class against Defendant in the action titled *Tucker v. Chase Bank USA, N.A.*, Case No. 1:18-cv-03155 (S.D.N.Y.) (the "Action"), shall be settled and compromised upon the terms and conditions contained herein.

## I.   <u>Recitals</u>

WHEREAS, on April 10, 2018, Brady Tucker filed a class action complaint in the United States District Court for the Southern District of New York (the "Court"), alleging that JPMorgan Chase Bank, N.A., f/k/a Chase Bank USA, N.A. ("Chase") violated the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, as well as Regulation Z promulgated thereunder, 12 C.F.R. § 226, by processing Cryptocurrency Transactions made with his Chase credit card as "Cash Advances" instead of "Purchases" without providing him adequate advance notice;

WHEREAS, on August 17, 2018, Mr. Tucker, Ryan Hilton, and Stanton Smith ("Plaintiffs") filed an amended class action complaint, alleging that Chase also breached Plaintiffs' contracts with Chase;

WHEREAS, on August 1, 2019, the Court granted in part and denied in part Chase's motion to dismiss the amended class action complaint;

WHEREAS, after meaningful settlement discussions between counsel, Plaintiffs and Chase have reached agreement in principle on terms to settle the Action;

WHEREAS, the Parties now agree to settle the Action in its entirety pursuant to the terms set forth in this Agreement, without any admission of liability, with respect to all Released Claims (as defined below) of the Settlement Class, and intend this Agreement to bind the Parties and all Settlement Class Members who do not timely request to be excluded from the Settlement (as defined below);

**NOW, THEREFORE,** in light of the foregoing, for good and valuable consideration, the Parties agree that the Action shall be fully and finally compromised, settled, released, and dismissed with prejudice, subject to the terms and conditions of this Agreement and subject to Final Approval by the Court, as follows.

II.   **Definitions**

In addition to the terms defined at various points within this Agreement, the following Defined Terms apply throughout this Agreement:

1.      "Administrative Costs" means all fees paid to the Administrator for its services administering the Settlement and all out-of-pocket costs and third-party expenses of the Administrator that are associated with providing notice of the Settlement to the Settlement Class, administering and distributing the Settlement Amount to Participating Settlement Class Members, or otherwise administering or carrying out the terms of the Settlement, including but not limited to postage and telecommunications costs.

2.      "Administrator" means KCC Class Action Services, LLC.  Class Counsel and Chase may, by agreement, substitute a different organization as Administrator, subject to approval by the Court if the Court has previously approved the Settlement.  In the absence of agreement, either Class Counsel or Chase may move the Court to substitute a different organization as Administrator, upon a showing that the responsibilities of Administrator have not been adequately executed by the incumbent.

3.      "Agreement" means this Settlement Agreement and Release.

4.      "Cash Advance Fee" means the fee Chase charged for each transaction processed by Chase as a cash advance.

5.      "Cash Advance Interest" means interest charged pursuant to the Cash Advance APR on each transaction processed by Chase as a cash advance.

6.      "Chase" means JPMorgan Chase Bank, N.A., f/k/a Chase Bank USA, N.A.

7.      "Class Counsel" means Finkelstein & Krinsk LLP.

8.      "Class Member Award" means an award to a Participating Settlement Class Member of funds from the Net Cash Settlement Amount.

9.      "Class Notices" means the notices of proposed class action settlement (Exhibits A, B, and C attached hereto) that the Parties will ask the Court to approve for transmission to the Settlement Class.

10.     "Class Period" means the period between (and including) April 10, 2015 and the date this Agreement is executed.

11.     "Complaint" means the amended class action complaint filed in the Action on August 17, 2018.

12.     "Cryptocurrency" means digital or virtual currency that has no central issuing or regulating authority but instead uses a decentralized system to record transactions and manage the issuance of new units and also advanced cryptography for security, including, without limitation, Bitcoin, Litecoin, and Ethereum.

13.      "Cryptocurrency Transaction" means a transaction in which an individual acquires Cryptocurrency by using his or her consumer credit card.

14.      "Court" means the United States District Court for the Southern District of New York.

15.      "Defendant" means JPMorgan Chase Bank, N.A., f/k/a Chase Bank USA, N.A.

16.      "Effective Date" means the date seven (7) calendar days after all of the following events have occurred:

      a.      All Parties, Chase, and Class Counsel have executed this Agreement;

      b.      The Court has entered without material change the Final Approval Order; and

      c.      The time for seeking rehearing or appellate or other review has expired, and no appeal or petition for rehearing or review has been timely filed; or the Settlement is affirmed on appeal or review without material change, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing, review, appeal, or petition for certiorari could be taken has finally expired and relief from a failure to file same is not available.

Notwithstanding the foregoing, the Effective Date shall not be earlier than thirty-five (35) days after Final Approval.

17.      "Final Approval" means the entry by the Court of the Final Approval Order.

18.      "Final Approval Hearing" means a hearing set by the Court for the purpose of determining the fairness, adequacy, and reasonableness of the Settlement and associated procedures and requirements.

19.      "Final Approval Order" means the order and judgment that the Court enters finally approving this Settlement, as specified in paragraph 76.  In the event that the Court issues separate orders addressing the matters constituting final settlement approval, then Final Approval Order includes all such orders.

20.      "Long-Form Notice" means Notice posted on the Settlement Website that shall be substantially in the form attached hereto as Exhibit C.

21.      "National Change of Address Database" means the change of address database maintained by the United States Postal Service.

22.      "Net Cash Settlement Amount" means the Cash Settlement Amount, less the Service Awards, the Fee & Expense Award, and the Administrative Costs.

23.      "Notice Deadline" means the date by which the Administrator must complete the Notice Program, which shall be the date forty (40) days after Preliminary Approval.

24.   "Notice Program" means the methods provided for in this Agreement for giving the Notice and consists of (1) the Email Notice; (2) the Postcard Notice; and (3) the Long-Form Notice.

25.   "Objection Deadline" means the date by which a Settlement Class Member must serve written objections to the Settlement, if any.  The Objection Deadline shall be sixty (60) days after the Notice Deadline, or on such other date as the Court may order.  The Objection Deadline will be specified in the Notice.

26.   "Opt-Out Deadline" means the date by which a request to opt out must be filed or submitted in writing to the Administrator for a person who would otherwise fall within the Settlement Class to be excluded from the Settlement Class.  The Opt-Out deadline shall be sixty (60) days after the Notice Deadline, or on such other date as the Court may order.  The Opt-Out Deadline will be specified in the Notice.

27.   "Participating Settlement Class Member" means any Settlement Class Member except for Settlement Class Opt-Outs.

28.   "Parties" means Plaintiffs and Chase, collectively.

29.   "Party" means Plaintiffs or Chase, individually.

30.   "Plaintiffs" means Brady Tucker, Ryan Hilton, and Stanton Smith, collectively.

31.   "Preliminary Approval" means the entry by the Court of the Preliminary Approval Order.

32.   "Preliminary Approval Hearing" means any hearing held on Plaintiffs' motion seeking Preliminary Approval.

33.   "Preliminary Approval Order" means the Order approving the form and content of Notice and preliminarily certifying the Settlement Class, in a form substantially the same as in the attached Exhibit D.  The proposed Preliminary Approval Order that will be attached to the motion shall be in a form agreed upon by Class Counsel and Chase, and substantially in the form as that attached hereto as Exhibit D.  The motion for Preliminary Approval shall request that the Court:  (1) approve the Notice Program as set forth herein, and authorize Class Notices on the basis that the terms of the Settlement are within the range of fair, adequate, and reasonable; (2) provisionally certify the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) and 23(e), for settlement purposes only; (3) designate Plaintiffs as the representatives of the Settlement Class; (4) appoint Class Counsel; (5) approve the procedures set forth in Sections IX and X hereof for Settlement Class Members to exclude themselves from the Settlement Class or to object to the Settlement; and (6) schedule a Final Approval hearing for a time and date mutually convenient for the Court, Class Counsel, and Chase, but no earlier than one hundred and twenty (120) days after Preliminary Approval.

34.   "Releases" means all of the releases contained in Section XVI hereof.

35.   "Released Claims" means all claims to be released as specified in Section XVI hereof.

36.  "Released Parties" means those persons and entities released as specified in Section XVI hereof.

37.  "Releasing Parties" means Plaintiffs and all Participating Settlement Class Members, and each of their respective past, present and future directors, officers, managers, employees, general partners, limited partners, principles, employees, insurers, reinsurers, attorneys, advisors, representatives, predecessors, successors, assigns, and legal representatives.

38.  "Service Awards" means payments to the Plaintiffs, not to exceed $7,000.00 for each of the three Plaintiffs, to be paid from the Settlement Fund Account within thirty (30) calendar days of the Effective Date.

39.  "Settlement" means the settlement into which the Parties have entered to resolve the Action.  The terms of the Settlement are as set forth in this Agreement.

40.  "Settlement Class" means all current and former Chase credit-card accountholders in the United States to whom Chase charged Cash Advance Fees and/or Cash Advance Interest for Cryptocurrency Transactions made with their Chase consumer credit card during the Class Period.  Excluded from the Settlement Class are Chase; Chase's officers and directors at all relevant times, as well as members of their immediate families and their legal representatives, heirs, successors or assigns; and any entity in which Chase has or had a controlling interest.  Also excluded from the Settlement Class are federal, state, and local governments and all agencies and subdivisions thereunder; and any judge to whom this Action is or has been assigned and any member of her immediate family.

41.  "Settlement Class Member" means any person included in the Settlement Class.

42.  "Settlement Class Opt-Outs" means the Settlement Class Members who have opted out of the Settlement, consistent with the terms of this Agreement.

43.  "Settlement Fund Account" means an interest-bearing account held by an FDIC- or NCUA-insured financial institution, into which Chase shall deposit the Cash Settlement Amount.  Class Counsel and Chase shall agree on the FDIC- or NCUA-insured financial institution at which the account shall be established.

44.  "Settlement Website" means the website that the Administrator will establish within thirty (30) calendar days of Preliminary Approval.

### III.    Conditional Certification of the Settlement Class

45.  For purposes of this Settlement only, the Parties agree to certification of the Settlement Class, as defined above in paragraph 40, under Rules 23(b)(3) and 23(e) of the Federal Rules of Civil Procedure.

46.  In the event that the Settlement does not receive Final Approval, or in the event the Effective Date does not occur, any order certifying the Settlement Class for purposes of effectuating the Settlement and the terms of this Agreement, and all preliminary and/or final findings regarding that class certification order, shall be automatically vacated upon

notice of the same to the Court, the Action shall proceed as though the Settlement Class had never been certified pursuant to this Agreement and such findings had never been made, and the Action shall return to the procedural *status quo* in accordance with this paragraph.  In addition, the Parties shall not be bound by this Settlement's definition of the Settlement Class; the Parties shall not be permitted to use it as evidence or otherwise in support of any argument or position in any motion, brief, hearing, appeal, or otherwise; and Chase shall retain its right to object to the maintenance of this Action as a class action, the suitability of Plaintiffs to serve as class representatives, and the suitability of Class Counsel to serve as class counsel.

## IV.   Settlement Consideration

47.     Chase shall pay a Cash Settlement Amount of Two Million Five Hundred Thousand Dollars (**$2,500,000.00**) to settle the Action.  The Cash Settlement Amount encompasses all cash compensation to the Settlement Class, inclusive of the Fee & Expense Award; the Service Awards; and all Administrative Costs.

## V.   Calculation of Class Member Awards

48.     Each Participating Settlement Class Member who incurred a Cash Advance Fee and/or Cash Advance Interest for a Cryptocurrency Transaction made on his or her Chase consumer credit card, to the extent such fees and/or interest were not later reversed, shall be eligible to receive a Class Member Award from the Net Cash Settlement Amount.

49.     Class Member Awards shall be calculated using a proportional payment structure, whereby each Participating Settlement Class Member shall receive a share of the Net Cash Settlement Amount corresponding to the individual Participating Settlement Class Member's share of the total Cash Advance Fees that the Settlement Class (excluding Settlement Class Opt-Outs) incurred with respect to Cryptocurrency Transactions (net of reversed fees).

    a.     The percentage used to calculate Class Member Awards shall be determined by dividing the Net Cash Settlement Amount by the total amount of Cash Advance Fees on Cryptocurrency Transactions (net of reversed fees) that Chase assessed during the Class Period on credit card accounts held by Participating Settlement Class Members.

    b.     That percentage shall then be multiplied by the total amount of Cash Advance Fees each Participating Settlement Class Member incurred with respect to Cryptocurrency Transactions (net of reversed fees) and rounded to the nearest penny, to determine each Participating Settlement Class Member's Class Member Award.

50.     In the event the aggregate amount of Class Member Awards dictated by the proportional payment structure described in paragraph 49 exceeds the Net Cash Settlement Amount, the cash award for each transaction shall be reduced *pro rata* until the aggregate amount of Class Member Awards no longer exceeds the Net Cash Settlement Amount.

## VI.   **Preliminary Approval**

51.    Upon execution of this Agreement by counsel for all Parties, Class Counsel shall promptly submit for the Court's consideration a motion seeking Preliminary Approval of the Settlement and shall apply to the Court for entry of a Preliminary Approval Order.

52.    In the event that the Court does not enter the Preliminary Approval Order in substantially the same form as Exhibit D, the Parties shall have the right to terminate this Agreement and the Settlement, per Section XVII below.

53.    In Plaintiffs' motion seeking Preliminary Approval, Plaintiffs shall request that the Court approve the Class Notices attached as Exhibits A, B, and C.  The Court will ultimately determine and approve the content and form of the Class Notices to be distributed to Settlement Class Members.

54.    In Plaintiffs' motion seeking Preliminary Approval, Plaintiffs also shall request that the Court enter the following schedule governing the Settlement:

    a.    Deadline for Administrator to send Chase estimate of Administrative Costs: seven (7) calendar days after filing of motion for Preliminary Approval

    b.    Deadline for Administrator to provide notice required by Class Action Fairness Act ("CAFA"): ten (10) calendar days after filing of motion for Preliminary Approval

    c.    Deadline for Chase to provide information on Settlement Class Members to Administrator: fourteen (14) calendar days after Preliminary Approval

    d.    Deadline for establishing Settlement Website: thirty (30) calendar days after Preliminary Approval

    e.    Notice Deadline: forty (40) days after Preliminary Approval

    f.    Deadline for Administrator to submit affidavit confirming completion of Notice Program: seven (7) calendar days after Notice Deadline

    g.    Deadline for filing motions for Fee & Expense Award and Service Awards: thirty (30) days after Notice Deadline

    h.    Opt-Out Deadline and Objection Deadline: sixty (60) calendar days after Notice Deadline

    i.    Deadline for Chase to exercise right to terminate Settlement if the number of Settlement Class Opt-Outs exceeds 2% of the number of all Settlement Class Members: fourteen (14) calendar days after Chase's receipt of opt out report

j. Deadline for Administrator to file report of number of Settlement Class Opt-Outs with the Court: seven (7) calendar days prior to Final Approval Hearing

k. Deadline for Class Counsel to file motion for Final Approval: seven (7) calendar days prior to Final Approval Hearing

l. Final Approval Hearing: no earlier than one hundred and twenty (120) calendar days after Preliminary Approval

## VII.  Administrator

55. The Administrator shall administer various aspects of the Settlement as described in the next paragraphs and perform other functions specified for the Administrator elsewhere in this Agreement, including, but not limited to, providing Notice to Settlement Class Members as described in Section VIII; establishing and maintaining the Settlement Website; making distributions from the Settlement Fund Account, including Class Member Awards, as provided herein; and paying the remainder of any Settlement Fund Account to Chase in the event of a termination of the Settlement pursuant to Section XVII hereof.

56. The duties of the Administrator, in addition to other responsibilities that are described in this Agreement, are as follows:

a. Conduct the Notice Program;

b. Maintain an address for receiving mailed requests for exclusion from the Settlement Class;

c. Establish and maintain the Settlement Website as a means for Settlement Class Members to obtain notice of and information about the Settlement, through and including hyperlinked access to this Agreement, the Long-Form Notice, the Preliminary Approval Order, and such other documents as Class Counsel and Chase agree to post or that the Court orders posted on the Settlement Website;

d. Establish and maintain an automated toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answer the questions of Settlement Class Members who call with or otherwise communicate such inquiries;

e. Respond to any mailed inquiries from Settlement Class Members;

f. Process all requests for exclusion from the Settlement Class;

g. Provide reports on request, and, no later than seven (7) calendar days after the Opt-Out and Objection Deadlines, a final report to Class Counsel and Chase that summarizes the number of requests for exclusion and objections received during

that period, the total number of exclusion requests and objections received to date, and other pertinent information;

h.   Payment of any taxes pursuant to paragraph 81;

i.   At Class Counsel's request in advance of the Final Approval Hearing, prepare an affidavit to submit to the Court that identifies the number of Class Members who timely and properly requested exclusion from the Settlement Class;

j.   Process and transmit Class Member Awards, and any other distributions to Settlement Class Members, from the Settlement Fund Account;

k.   Pay invoices, expenses, and costs upon approval by Class Counsel and Chase, as provided in this Agreement; and

l.   Perform any settlement administration-related function at the instruction of Class Counsel and Chase, including, but not limited to, verifying that the Net Cash Settlement Amount has been distributed as required by Section XIV hereof.

57.   The documents specified in paragraph 56(c) shall remain on the Settlement Website at least until thirty (30) days after Final Approval.  The URL of the Settlement Website shall be www.TuckerChaseSettlement.com, if available, or such other available URL as Class Counsel and Chase may subsequently agree upon in writing.  The Settlement Website shall not include any advertising, and it shall not bear or include the Chase logo or any Chase trademarks.  Ownership of the Settlement Website URL shall be transferred to Chase within ten (10) calendar days of the date on which operation of the Settlement Website ceases.

**VIII.   <u>Notice to Settlement Class Members</u>**

58.   Within fourteen (14) calendar days of Preliminary Approval, Chase will provide the Administrator with the following information for each Settlement Class Member, which is provided solely for the purpose of providing Notice to Settlement Class Members and allowing them to recover under this Settlement and shall be kept strictly confidential between the Administrator and Chase:

a.   Name;

b.   Last known e-mail address (if available);

c.   Last known mailing address; and

d.   The amount that the Settlement Class Member incurred in Cash Advance Fees with respect to Cryptocurrency Transactions (net of reversed fees).

The Administrator shall use the data provided by Chase to make the calculations required by Section V of this Agreement, and the Administrator shall share the calculations with Class Counsel.  The Administrator shall use this information solely for the purpose of administering

the Settlement.  Should a Settlement Class Member raise a dispute with the Administrator, the Administrator may provide Class Counsel with the information identified in (a) and (d) above, along with information regarding the nature of the dispute.

59.    Within forty (40) calendar days of Preliminary Approval, or by the time specified by the Court, the Administrator shall send the Class Notices through the Notice Program described below, or in such other form as is approved by the Court.

   a.    The Administrator shall send the Email Notice, attached hereto as Exhibit A, to all Settlement Class Members for whom Chase has provided the Administrator with an email address.

   b.    The Administrator shall send the Postcard Notice, attached hereto as Exhibit B, to all Settlement Class Members for whom Chase has not provided an email address and to all Settlement Class Members to whom the Administrator sent Exhibit A via email but for whom the Administrator receives notice of an undeliverable email.  Exhibit B shall be mailed after the Administrator cross-references and updates mailing addresses provided by Chase with the National Change of Address Database, and other commercially reasonable means, to obtain any updated address information for Settlement Class Members.

   c.    The Administrator shall also maintain a website containing the Complaint, the Long-Form Notice attached hereto as Exhibit C, and any motions or orders relating to Preliminary Approval or Final Approval, which shall remain operational until at least thirty (30) calendar days after Final Approval.  The Administrator shall send the Long-Form Notice by mail or email to any Settlement Class Member who requests a copy.

60.    Class Notices provided under the Notice Program shall not bear or include any Chase logo or trademarks or Chase's return address, or otherwise be styled to appear to originate from Chase.

61.    The Notice Program shall be completed by the Notice Deadline.  Within seven (7) calendar days of the date the Administrator completes the Notice Program, the Administrator shall provide Class Counsel and Chase an affidavit confirming that the Notice Program was completed in a timely manner.  Class Counsel shall file that affidavit with the Court as an exhibit to, or in conjunction with, Plaintiffs' motion for a Final Approval Order.

62.    All costs of the Notice Program shall be deducted from the Cash Settlement Amount.

63.    Further specific details of the Notice Program shall be subject to the agreement of Class Counsel and Chase.

## IX.    Exclusions and Opt-Outs

64.    As set forth below, Settlement Class Members shall have the right to opt out of the Settlement Class and this Settlement, or to object to this Settlement.

65.     A Settlement Class Member who wishes to be excluded from the Settlement Class and this Settlement must submit to the Administrator, using a form available at the website address listed in the Class Notices, a written, signed, and dated statement that he or she is opting out of the Settlement Class and understands that he or she will not receive a Class Member Award from the Settlement of the Action.  To be effective, this opt-out statement must (1) be postmarked no later than the Opt-Out Deadline; (2) include the individual's full name, address, telephone number, and the last four digits of his or her Chase credit-card account number(s); (3) state that the individual wants to be excluded from the Settlement in *Tucker v. Chase Bank USA N.A.*, Case No. 1:18-cv-03155-KPF (S.D.N.Y.), and that the individual understands that he or she will receive no money from the Settlement; and (4) be personally signed and dated by the individual.

66.     Within seven (7) calendar days of receiving any opt-out statement, the Administrator shall provide counsel for the Parties with a copy of the opt-out statement.

67.     Settlement Class Opt-Outs are not entitled to receive a Class Member Award under this Settlement.

68.     Neither the Parties nor any person acting on their behalf shall seek to solicit or otherwise encourage anyone to opt out of the Settlement.

## X.      Objections

69.     Any Participating Settlement Class Member may object to any aspect of the Settlement. Objections must be electronically filed with the Court, or mailed to the Clerk of the Court, with copy to Class Counsel and Chase's counsel.  For an objection to be considered by the Court, the objection must be electronically filed or mailed first-class postage prepaid and addressed in accordance with the instructions and the postmark date indicated on the envelope must be no later than the Objection Deadline, as specified in the Notice.

70.     For an objection to be considered, the objection must also set forth:

   a.      The name of the Action (*Tucker v. Chase Bank USA, N.A.*, Case No. 1:18-cv-03155 (S.D.N.Y.));

   b.      The objector's full name, address, and phone number;

   c.      An explanation of the basis upon which the objector claims to be a Settlement Class Member;

   d.      All grounds for the objection, accompanied by any legal support for the objection;

   e.      The identity of all counsel who represent the objector in this matter, including any former or current counsel who may be entitled to compensation for any reason related to the objection;

f.     Whether the objector intends to appear at the Final Approval Hearing and, if so, the identity of all counsel representing the objector who will appear at the Final Approval Hearing;

g.     A list of all other class action settlements to which the objector or their counsel filed an objection;

h.     A list of any persons who will be called to testify at the Final Approval Hearing in support of the objection; and

i.     The objector's signature (an attorney's signature is not sufficient).

71.    All evidence and legal support a Participating Settlement Class Member wishes to use to support an objection must be filed with the Court on or before the Objection Deadline and sent to the Parties postmarked on or before the Objection Deadline.

72.    The Parties may file responses to any objections that are submitted and shall have the right to take discovery, including via subpoenas *duces tecum* and depositions, from any objector.

73.    Any Participating Settlement Class Member who timely files and serves an objection in accordance with this section may appear at the Final Approval Hearing, either in person or through an attorney, if the Participating Settlement Class Member files a notice with the Court by the Objection Deadline indicating that he or she wishes to appear at the Final Approval Hearing.  A Settlement Class Member who wishes to appear at the Final Approval Hearing must also send to the Administrator, by the Objection Deadline, a copy of the notice indicating that he or she wishes to appear.  Failure to adhere to the requirements of this section will bar a Participating Settlement Class Member from being heard at the Final Approval Hearing, either individually or through an attorney, unless the Court otherwise orders.

74.    Neither the Parties nor any person acting on their behalf shall seek to solicit or otherwise encourage anyone to object to the Settlement, or appeal from any order of the Court that is consistent with the terms of this Settlement.

## XI.   **Final Approval and Judgment**

75.    Plaintiffs' motion for Preliminary Approval will include a request to the Court for a scheduled date on which the Final Approval Hearing will occur.

76.    Plaintiffs and Class Counsel shall submit for the Court's consideration, seven (7) days before the Final Approval Hearing or by such other deadline as the Court may order, a proposed Final Approval Order, which shall be subject to review and consent by Chase before filing.  The motion for Final Approval of this Settlement, the form of which will also be subject to review and consent by Chase, shall include a request that the Court enter the Final Approval Order and, if the Court grants Final Approval of the Settlement and incorporates the Agreement into the final judgment, that the Court dismiss this

Action with prejudice, subject to the Court's continuing jurisdiction to enforce the Agreement.

77.     In the event that the Court does not enter the Final Approval Order in a form substantially the same as submitted, as determined by the Parties, the Parties have the right to terminate this Agreement and the Settlement, per Section XVII below.  While materiality remains subject to the Parties' determination in their reasonable discretion, material changes shall not include any changes to the legal reasoning or format used by the Court to justify the substantive relief sought by the Final Approval Order.  In the event that the Effective Date does not occur, the Final Approval Order is vacated or reversed, or the Settlement does not become final and binding, the Parties agree to request that the Court vacate any dismissal with prejudice.

78.     The Parties agree that if this Agreement becomes null and void, Chase shall not be prejudiced in any way from opposing class certification in the Action; and Plaintiffs and the Settlement Class Members shall not use anything in this Agreement, in any terms sheet, or in the Preliminary Approval Order or Final Approval Order to support a motion for class certification or as evidence of any wrongdoing by Chase.  No Party shall be deemed to have waived any claims, objections, rights or defenses, or legal arguments or positions, including but not limited to, claims or objections to class certification, or claims or defenses on the merits.  Each Party reserves the right to prosecute or defend this Action in the event that this Agreement does not become final and binding.

## XII.     Settlement Fund Account

79.     Within seven (7) calendar days of the filing of Plaintiff's motion for Preliminary Approval, the Administrator shall provide the Parties an estimate of the costs to implement the Notice Program, establish the Settlement Website, establish toll-free telephone and cell phone numbers, and any other up-front expenses.  Within fourteen (14) calendar days of Preliminary Approval, Chase shall transfer such amount to the Administrator for deposit into the Settlement Fund Account.

80.     In exchange for the mutual promises and covenants in this Agreement, including, without limitation, the Releases as set forth in Section XVI hereof and the dismissal of the Action upon Final Approval, within fourteen (14) calendar days of the Effective Date, Chase shall transfer to the Administrator the remainder of the Cash Settlement Amount (*i.e.*, the Cash Settlement Amount less the amount of any settlement administration costs that Chase has already transferred to the Administrator or deposited in the Settlement Fund Account) for deposit into the Settlement Fund Account.

81.     The monies in the Settlement Fund Account at all times shall be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg. § 1.468B-l.  All taxes (including any estimated taxes, and any interest or penalties relating to them) arising with respect to the income earned by the Settlement Fund Account or otherwise, including any taxes or tax detriments that may be imposed upon Class Counsel, Chase, or Chase's counsel with respect to income earned by the Settlement Fund Account for any period during which the Settlement Fund Account does not qualify as a "qualified

settlement fund" for the purpose of federal or state income taxes or otherwise (collectively "Taxes"), shall be paid out of the Settlement Fund Account. Plaintiffs and Class Counsel, and Chase and its counsel, shall have no liability or responsibility for any Taxes. The Settlement Fund Account shall indemnify and hold Plaintiffs and Class Counsel, and Chase and its counsel, harmless for all Taxes (including, without limitation, Taxes payable by reason of any such indemnification).

82.     The Settlement Fund shall be used for the following purposes:

      a.   Distribution of Class Member Awards;

      b.   Payment of the Court-ordered award of Class Counsel's attorneys' fees and costs pursuant to Section XIII hereof;

      c.   Payment of the Court-ordered Service Awards to Plaintiffs pursuant to Section XIII hereof;

      d.   Payment of any Administrative Costs, including but not limited to costs related to the Notice Program;

      e.   Payment of any Taxes pursuant to paragraph 81 hereof, including, without limitation, taxes owed as a result of interest earned on the Settlement Fund Account, in a timely manner, subject to approval by Class Counsel and Chase; and

      f.   Payment of additional fees, costs, and expenses not specifically enumerated in subparagraphs (a) through (e) of this paragraph, consistent with the purposes of this Agreement, subject to approval of Class Counsel and Chase.

## XIII.   Service Awards and Fee & Expense Award

83.     Plaintiffs, through their undersigned counsel, shall each be entitled to apply to the Court for an award from the Cash Settlement Amount of up to $7,000.00 for their participation in the Action and their service to the Settlement Class (the "Service Awards"). Chase shall not oppose such application that does not exceed $7,000.00 per Plaintiff.

84.     Any Service Award approved by the Court in an amount less than the amount sought by a Plaintiff is not a basis for setting aside this Agreement, and the decision by the Court concerning the Service Awards shall not affect the validity of the Agreement or finality of the Settlement.

85.     The Parties consent to the Court appointing Class Counsel in this Action for purposes of the Settlement. Class Counsel shall be entitled to apply to the Court for an award for attorneys' fees incurred in investigating and litigating this Action, as well as for costs and expenses incurred in the Action, in an amount not to exceed thirty-three percent (33%) of the Cash Settlement Amount (the "Fee & Expense Award"). Chase agrees not to oppose or appeal any such applications that do not collectively exceed thirty-three percent (33%) of the Cash Settlement Amount. The Fee & Expense Award shall constitute full

satisfaction of any obligation on Chase's part to pay any person, attorney, or law firm for costs, litigation expenses, attorneys' fees, or any other expense incurred on behalf of Plaintiffs or the Settlement Class.

86.    A Fee & Expense Award approved by the Court in an amount less than the amount sought by Class Counsel is not a basis for setting aside this Agreement, and the decision by the Court concerning the Fee & Expense Award shall not affect the validity of the Agreement or finality of the Settlement.

87.    Any Service Awards and any Fee & Expense Award shall be paid from the Settlement Fund Account, out of the Cash Settlement Amount, within twenty (20) calendar days of the Effective Date.

**XIV.   Distribution of Class Member Awards from Net Cash Settlement Amount**

88.    Within ten (10) calendar days of Final Approval, the Administrator shall provide to Chase: (1) a list of the Participating Settlement Class Members who are entitled to receive Class Member Awards; and (2) the amount of each Class Member Award due to each individual or entity entitled to receive Class Member Awards.  The information provided by the Administrator shall be considered conclusive as to which individuals and entities are entitled to receive a Class Member Award and as to the amount of the Class Member Award to which each Participating Settlement Class Member is entitled.

89.    Within sixty (60) calendar days of the Effective Date, the Administrator shall send Class Member Awards from the Settlement Fund Account via check to all Participating Settlement Class Members entitled to Class Member Awards.  If the Participating Settlement Class Members who are entitled to Class Member Awards are joint accountholders, the Class Member Award check shall be made payable to both accountholders.

90.    Prior to mailing Class Member Award checks, the Administrator shall attempt to update the last known addresses of the Participating Settlement Class Members through the National Change of Address Database or similar databases.  Checks shall be valid for ninety (90) calendar days after issuance.  The Administrator will make reasonable efforts to locate the proper address for any intended recipient of Settlement Fund Payments whose check is returned by the Postal Service as undeliverable and will re-mail it once to the updated address.  Class Member Award checks returned with a forwarding address shall be re-mailed to the new address within seven (7) calendar days.  The Administrator shall not mail Class Member Award checks to addresses from which Class Notices were returned as undeliverable.

91.    All interest on the funds in the Settlement Fund Account shall accrue to the benefit of the Settlement Class.  Any interest shall not be subject to withholding and shall, if required, be reported appropriately to the Internal Revenue Service by the Administrator.  The Administrator is responsible for the payment of all taxes on interest on the funds in the Settlement Fund Account.

92.     If a Participating Settlement Class Member's check is not deposited (or cashed) within ninety (90) calendar days after the check is mailed, (1) the check shall be null and void, and (2) the Administrator shall once again follow the procedures set forth above in paragraph 90 and shall send a second check to the Participating Settlement Class Member, also to be valid for ninety (90) calendar days after issuance.  If that Class Member's second check also is not deposited (or cashed) within ninety (90) calendar days after the second check is mailed, then (1) the second check shall be null and void, (2) the Class Member shall be barred from receiving a further Class Member Award under this Settlement, and (3) the amount of the Class Member's award shall revert to the Settlement Fund Account and be distributed as described in Section XV.

93.     Any Class Member Award paid to a deceased Participating Settlement Class Member shall be made payable to the estate of the deceased Participating Settlement Class Member, provided that the Participating Settlement Class Member's estate informs the Administrator of the Class Member's death at least thirty (30) calendar days before the date that Class Member Award checks are mailed and provides a death certificate confirming that the Class Member is deceased.  If the Participating Settlement Class Member's estate does not inform the Administrator of the Class Member's death at least thirty (30) calendar days before Class Member Award checks are mailed, then the deceased Participating Settlement Class Member will be barred from receiving a Class Member Award under this Settlement.

94.     The Parties shall have no responsibility or liability for any federal, state, or other taxes owed by Participating Settlement Class Members as a result of, or that arise from, any Class Member Awards or any other term or condition of this Agreement.

95.     The Administrator shall prepare, send, file, and furnish all tax information reporting forms required for payments made from the Settlement Fund Account as required by the Internal Revenue Service pursuant to the Internal Revenue Code and related Treasury Regulations.  The Parties agree to cooperate with the Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions set forth in this section.

96.     The Administrator shall provide the Parties with a reconciliation and accounting of the Settlement Fund Account at each of the following times: (1) no later than ten (10) calendar days after the Class Member Award checks are mailed, and (2) no later than ten (10) calendar days after the expiration of the 90-day period for depositing Class Member Award checks.

## XV.   Disposition of Residual Funds

97.     In the event that there is any residual in the Settlement Fund Account after the Class Member Award distributions required by this Agreement are completed, said residual funds shall in no circumstance revert to Chase.  Subject to the approval of the Court, the residual funds may be distributed to Participating Settlement Class Members who deposited (or cashed) their own original check through a secondary, pro-rata distribution of the residual less the cost of the secondary distribution; however, if the residual amount

less the cost of the secondary distribution is less than $5,000.00, the funds may be distributed instead to a residual *cy pres* program chosen by and mutually agreed to by Class Counsel and Chase.  Any *cy pres* distribution shall be paid as soon as reasonably possible following the completion of all distributions of funds to the Settlement Class Members.  The residual funds shall be disposed of within one hundred and eighty (180) calendar days of the mailing of the final Class Member Award from the Settlement Fund Account.

## XVI.  **Releases**

98.    Upon the Effective Date, Plaintiffs and Participating Settlement Class Members, each on behalf of himself or herself and on behalf of his or her respective heirs, assigns, beneficiaries, and successors, shall automatically be deemed to have fully and irrevocably released and forever discharged Chase and each of its present, former, and future parents (including JPMorgan Chase & Co.), subsidiaries, predecessors, successors, assigns, assignees, affiliates, conservators, divisions, departments, subdivisions, owners, partners, principals, trustees, creditors, insurers, shareholders, joint ventures, co-venturers, officers, and directors (whether acting in such capacity or individually), attorneys, advisors, consultants, independent contractors, wholesalers, resellers, distributors, retailers, vendors, accountants, nominees, agents (alleged, apparent, or actual), representatives, employees, managers, administrators, and each person or entity acting or purporting to act for them or on their behalf, including, but not limited to all of their subsidiaries and affiliates (collectively, "Releasees") with respect to any claims, issues, liabilities, rights, actions, causes of action, demands, damages, penalties, costs, attorneys' fees, losses, or remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that relate to, result from, are based upon, or arise out of any of the claims that were asserted in the Action, and any allegations, acts, transactions, facts, events, matters, occurrences, representations, statements, or omissions that were or could have been set forth, alleged, referred to, or asserted in the Action, and whether assertable in the form of a cause of action or as a private motion, petition for relief or claim for contempt, or otherwise, and in any court, tribunal, arbitration panel, commission, agency, or before any governmental and/or administrative body, or any other adjudicatory body, and whether based on TILA, Regulation Z, or any other federal, state (including, without limitation, breach of contract, tortious interference with contractual relations, breach of the implied covenant of good faith and fair dealing, and the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*), local, statutory or common law or any other law, rule, regulation, ordinance, code, contract, common law, or any other source, including the law of any jurisdiction outside the United States (including both direct and derivative claims), including any and all claims for damages, injunctive relief, interest, attorney fees, and litigation expenses ("Released Claims").

99.    With respect to the Released Claims, Plaintiffs and Participating Settlement Class Members shall be deemed to have, and by operation of the Settlement shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code (to the extent it is

applicable, or any other similar provision under federal, state or local law to the extent any such provision is applicable), which reads:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Thus, subject to and in accordance with this Agreement, even if the Plaintiffs and/or Participating Settlement Class Members may discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the Released Claims, Plaintiffs and each Participating Settlement Class Member, upon entry of Final Approval of the Settlement, shall be deemed to have and by operation of the Final Approval Order, shall have, fully, finally, and forever settled and released all of the Released Claims. This is true whether such claims are known or unknown, suspected or unsuspected, contingent or non-contingent, concealed or hidden, which now exist or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts.

100. Plaintiffs and Participating Settlement Class Members covenant not to sue or otherwise assert any claims against Chase challenging practices with respect to assessing Cash Advance Fees and/or Cash Advance Interest charges for Cryptocurrency purchases made during the Class Period.

## XVII. Termination of Settlement

101. This Settlement may be terminated by either Class Counsel or Chase by serving on counsel for the opposing Party and filing with the Court a written notice of termination within forty-five (45) days (or such longer time as may be agreed between Class Counsel and Chase) after any of the following occurrences:

   a. Class Counsel and Chase agree to termination;

   b. the Court rejects, materially modifies, materially amends or changes, or declines to approve the Settlement;

   c. an appellate court reverses the Final Approval Order, and the Settlement is not reinstated and finally approved without material change by the Court on remand within one hundred and eighty (180) calendar days of such reversal;

   d. any court incorporates terms or provisions into, or deletes or strikes terms or provisions from, or modifies, amends, or changes, the Preliminary Approval

Order, the Final Approval Order, or the Settlement in a way that Class Counsel or Chase reasonably considers material;

e.  the Effective Date does not occur; or

f.  any other ground for termination provided for elsewhere in this Agreement.

102.  Chase also shall have the right, in its sole discretion, to terminate the Settlement if the number of Settlement Class Opt-Outs exceeds 2% of the number of all Settlement Class Members (the "Termination Option").  Chase shall give written notice to Class Counsel of any decision to exercise the Termination Option within fourteen (14) calendar days of Chase's receipt of the last timely opt-out statement received pursuant to paragraph 66.  In the event Chase exercises the Termination Option, this Settlement shall become null and void and shall have no further force or effect, all funds being held in the Settlement Fund Account shall revert to Chase, the Action shall continue, any Preliminary Approval Order shall be automatically vacated, and the Parties shall confer with the Court as to whether and how any notice of the termination should be sent to the Settlement Class, with Chase bearing the cost of such notice.  Further, the provisions of paragraph 104 shall govern the parties' respective post-termination rights and obligations.

103.  No Party may terminate the Settlement because of (1) any intervening change in law impacting the claims alleged in the Action, or (2) the amount of attorneys' fees awarded to Class Counsel or of any Service Awards awarded to Plaintiffs.

104.  In the event of a termination, this Agreement shall be considered null and void; all of Chase's obligations under the Agreement shall cease to be of any force and effect; the amounts in the Settlement Fund Account shall be returned to Chase; and the Parties shall return to the *status quo ante* in the Action as if the Parties had not entered into this Agreement.  In addition, in the event of such a termination, all of the Parties' respective pre-Settlement claims and defenses will be preserved, including, but not limited to, Plaintiff's right to seek class certification and Chase's right to oppose class certification.  Further, any discussions, offers, or negotiations associated with this Settlement shall not be discoverable or offered into evidence or used in the Action or any other action or proceeding for any purpose, without prejudice to Plaintiff's right to seek class certification, and Chase's right to oppose class certification.  In such event, all Parties to the Action shall stand in the same position as if this Agreement had not been negotiated, made, or filed with the Court.

105.  In the event of a termination, and after payment of any invoices or other fees or expenses mentioned in this Agreement that have been incurred and are due to be paid from the Settlement Fund Account, the Administrator shall return the balance of the Settlement Fund Account to Chase within seven (7) calendar days of termination.

## XVIII. No Admission of Liability

106.  Chase disputes the claims alleged in the Action and does not by this Agreement or otherwise admit any liability or wrongdoing of any kind.  Chase has agreed to enter into

this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could have been asserted in the Action.

107.    Class Counsel and Plaintiffs believe that the claims asserted in the Action have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement, the risks associated with the continued prosecution of this complex, costly, and time-consuming litigation, the likelihood of certification of a class for litigation purposes, and the likelihood of success on the merits of the Action.  Class Counsel and Plaintiff have concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class Members.

108.    The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims.  No action taken by the Parties either previously or in connection with the negotiations or proceedings connected with this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

109.    Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement:  (1) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by Plaintiffs or Settlement Class Members, or of any wrongdoing or liability of the Released Parties; or (2) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Action or in any proceeding in any court, administrative agency or other tribunal.

110.    In addition to any other defenses Chase may have at law, in equity, or otherwise, to the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of this Agreement or the Releases contained herein.

## XIX.   Miscellaneous Provisions

111.    Gender and Plurals.  As used in this Agreement, the masculine, feminine, or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

112.    Deadlines.  If any of the dates or deadlines specified herein falls on a weekend or legal holiday, then the applicable date or deadline shall be moved to the next business day.

113.    Binding Effect.  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

114.    Cooperation of Parties.  The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, to seek Court approval, to defend Court approval, and

to do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

115. <u>Obligation to Meet and Confer</u>.  Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have so consulted.

116. <u>Integration</u>.  This Agreement constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof.  No covenants, agreements, representations, or warranties of any kind whatsoever have been made, or relied upon, by any Party hereto, except as provided for herein.

117. <u>No Conflict Intended</u>.  Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

118. <u>Governing Law</u>.  The Agreement shall be construed in accordance with, and be governed by, the laws of the State of Delaware, without regard to the principles thereof regarding choice of law.

119. <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts.  Original signatures are not required.  Any signature submitted by facsimile or through e-mail of an Adobe PDF shall be deemed an original.

120. <u>Jurisdiction</u>.  The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties.  The Court shall retain jurisdiction with respect to the administration, consummation and enforcement of the Agreement and for the purpose of enforcing all terms of the Agreement.  The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program and the Administrator.  As part of its agreement to render services in connection with this Settlement, the Administrator shall consent to the jurisdiction of the Court for this purpose.

121. <u>CAFA</u>.  The Administrator shall timely send the notices required by 28 U.S.C. § 1715 no more than ten (10) calendar days after Plaintiffs file the motion seeking a Preliminary Approval Order.

122.  <u>Notices</u>.  All notices to Class Counsel provided for herein shall be sent by e-mail with a hard copy sent by overnight mail to:

> David J. Harris, Jr.
> Finkelstein & Krinsk LLP
> 501 West Broadway, Suite 1260
> San Diego, CA 92101
> (t) 619-238-1333
> (f) 619-238-5425
> djh@classactionlaw.com

All notices to Chase provided for herein shall be sent by e-mail with a hard copy sent by overnight mail to:

> Noah A. Levine
> Wilmer Cutler Pickering Hale and Dorr LLP
> 7 World Trade Center
> 250 Greenwich Street
> New York, NY 10007
> (t) 212-230-8800
> (f) 212-230-8888
> noah.levine@wilmerhale.com

All notices to the Administrator required or desired to be given under this Agreement shall be in writing and sent by first-class mail as follows:

> *Tucker v. Chase* Claims Administrator
> KCC LLC
> 222 N Pacific Coast Highway, 3rd Floor
> El Segundo, CA 90245

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

123.  <u>Court Address for Objections</u>.  All objections must be sent to the Clerk of Court at the following address:

> Clerk of the Court
> U.S. District Court for the Southern District of New York
> Hon. Katherine Polk Failla
> Thurgood Marshall U.S. Courthouse
> 40 Foley Square, Courtroom 618
> New York, NY 10007

124.   <u>Modification and Amendment</u>.  This Agreement may be amended or modified only by a written instrument signed by counsel for Chase and Class Counsel and, if the Settlement has been approved by the Court, such amendment or modification is approved by the Court.

125.   <u>No Waiver</u>.  The waiver by any Party of any breach of this Agreement by another Party shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

126.   <u>Authority</u>.  Class Counsel, Plaintiffs, counsel for Chase, and Chase represent and warrant that the persons signing this Agreement have full power and authority to bind every person, partnership, corporation or entity included within the definitions of Plaintiffs and Chase to all terms of this Agreement.  Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

127.   <u>Agreement Mutually Prepared</u>.  Neither Chase nor Plaintiffs shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

128.   <u>Independent Investigation and Decision to Settle</u>.  The Parties understand and acknowledge that they:  (a) have performed an independent investigation of the allegations of fact and law made in connection with this Action; and (b) that even if they may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Action as reflected in this Agreement, that will not affect or in any respect limit the binding nature of this Agreement.  It is the Parties' intention to resolve their disputes in connection with this Action pursuant to the terms of this Agreement now, and thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in any substantive or procedural law, and this Agreement shall not be subject to rescission or modification by reason of any changes or differences in facts or law or changes in any substantive or procedural law, subsequently occurring or otherwise.

129.   <u>Receipt of Advice of Counsel</u>.  Each Party acknowledges, agrees, and specifically warrants that he, she, or it has fully read this Agreement and the Releases contained in Section XVI hereof, received independent legal advice with respect to the advisability of entering into this Agreement and the Releases, and the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases.

**FOR PLAINTIFFS AND THE
SETTLEMENT CLASS:**

Dated: 5/22/2020

_____
Brady Tucker

Dated: _____

_____
Ryan Hilton

Dated: _____

_____
Stanton Smith

Dated: _____

_____
David J. Harris, Jr.
FINKELSTEIN & KRINSK LLP
501 West Broadway, Suite 1260
San Diego, CA 92101

*Counsel for Plaintiffs, individually and on behalf
of the Settlement Class*

**FOR JPMORGAN CHASE BANK,
N.A., f/k/a CHASE BANK USA, N.A.:**

Dated: _____

_____

Title: _____

Dated: _____

_____
Noah A. Levine
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007

*Counsel for Defendant JPMorgan Chase Bank,
N.A., f/k/a Chase Bank USA, N.A.*

- 24 -

**FOR PLAINTIFFS AND THE
SETTLEMENT CLASS:**

Dated: _____

                                 Brady Tucker

Dated: _5/22/2020_____

                                 Ryan Hilton

Dated: _____

                                 Stanton Smith

Dated: _____

                                 David J. Harris, Jr.
                                 FINKELSTEIN & KRINSK LLP
                                 501 West Broadway, Suite 1260
                                 San Diego, CA 92101

                                 *Counsel for Plaintiffs, individually and on behalf
                                   of the Settlement Class*

**FOR JPMORGAN CHASE BANK,
N.A., f/k/a CHASE BANK USA, N.A.:**

Dated: _____          _____

                                 Title: _____

Dated: _____

                                 Noah A. Levine
                                 WILMER CUTLER PICKERING
                                   HALE AND DORR LLP
                                 7 World Trade Center
                                 250 Greenwich Street
                                 New York, NY 10007

                                 *Counsel for Defendant JPMorgan Chase Bank,
                                 N.A., f/k/a Chase Bank USA, N.A.*

**FOR PLAINTIFFS AND THE
SETTLEMENT CLASS:**

Dated: _____     _____
                                     Brady Tucker

Dated: _____     _____
                                     Ryan Hilton

Dated: ___ 5/23/20 _____       _____
                                     Stanton Smith


Dated: _____     _____
                                     David J. Harris, Jr.
                                     FINKELSTEIN & KRINSK LLP
                                     501 West Broadway, Suite 1260
                                     San Diego, CA 92101

                                     *Counsel for Plaintiffs, individually and on behalf
                                      of the Settlement Class*

**FOR JPMORGAN CHASE BANK,
N.A., f/k/a CHASE BANK USA, N.A.:**

Dated: _____     _____


                                     Title: _____


Dated: _____     _____
                                     Noah A. Levine
                                     WILMER CUTLER PICKERING
                                        HALE AND DORR LLP
                                     7 World Trade Center
                                     250 Greenwich Street
                                     New York, NY 10007

                                     *Counsel for Defendant JPMorgan Chase Bank,
                                      N.A., f/k/a Chase Bank USA, N.A.*

- 24 -

**FOR PLAINTIFFS AND THE
SETTLEMENT CLASS:**

Dated: _____                _____
                                              Brady Tucker

Dated: _____                _____
                                              Ryan Hilton

Dated: _____                _____
                                              Stanton Smith

Dated: _5/22/2020_____                _____
                                              David J. Harris, Jr.
                                              FINKELSTEIN & KRINSK LLP
                                              501 West Broadway, Suite 1260
                                              San Diego, CA 92101

                                              *Counsel for Plaintiffs, individually and on behalf
                                                  of the Settlement Class*

**FOR JPMORGAN CHASE BANK,
N.A., f/k/a CHASE BANK USA, N.A.:**

Dated: _____                _____

                                              Title: _____

Dated: _____                _____
                                              Noah A. Levine
                                              WILMER CUTLER PICKERING
                                                  HALE AND DORR LLP
                                              7 World Trade Center
                                              250 Greenwich Street
                                              New York, NY 10007

                                              *Counsel for Defendant JPMorgan Chase Bank,
                                                  N.A., f/k/a Chase Bank USA, N.A.*

- 24 -

DocuSign Envelope ID: C2503508-8312-4965-BBD5-7ACC47BEC883

**FOR PLAINTIFFS AND THE
SETTLEMENT CLASS:**

Dated: _____    _____

                                     Brady Tucker

Dated: _____    _____

                                     Ryan Hilton

Dated: _____    _____

                                     Stanton Smith

Dated: _____    _____

                                     David J. Harris, Jr.
                                     FINKELSTEIN & KRINSK LLP
                                     501 West Broadway, Suite 1260
                                     San Diego, CA 92101

                                     *Counsel for Plaintiffs, individually and on behalf*
                                     *of the Settlement Class*

**FOR JPMORGAN CHASE BANK,
N.A., f/k/a CHASE BANK USA, N.A.:**

Dated: __5/26/2020_____    _____

                                     Title: __CFO, CCB – MD_____

Dated: _____    _____

                                     Noah A. Levine
                                     WILMER CUTLER PICKERING
                                        HALE AND DORR LLP
                                     7 World Trade Center
                                     250 Greenwich Street
                                     New York, NY 10007

                                     *Counsel for Defendant JPMorgan Chase Bank,*
                                     *N.A., f/k/a Chase Bank USA, N.A.*

**FOR PLAINTIFFS AND THE
SETTLEMENT CLASS:**

Dated: _____       _____

Brady Tucker

Dated: _____       _____

Ryan Hilton

Dated: _____       _____

Stanton Smith

Dated: _____       _____

David J. Harris, Jr.
FINKELSTEIN & KRINSK LLP
501 West Broadway, Suite 1260
San Diego, CA 92101

*Counsel for Plaintiffs, individually and on behalf
of the Settlement Class*

**FOR JPMORGAN CHASE BANK,
N.A., f/k/a CHASE BANK USA, N.A.:**

Dated: _____       _____

Title: _____

Dated: 5/22/2020 _____       _____

Noah A. Levine
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007

*Counsel for Defendant JPMorgan Chase Bank,
N.A., f/k/a Chase Bank USA, N.A.*